## Cool's Executors vs. Higgins and others.

1. Where a will directs the executors to erect and maintain a fence around a cemetery, and charges all legacies and expenses directed by it upon lands devised, the executors can maintain a suit in equity against the devisees of the land, or their assigns, for the expenses of erecting such fence. Whether they can maintain such suit for legacies charged on the land—*Quære*.

2. A sale of lands made by order of the Chancellor, by virtue of the provisions of the act to authorize the sale of lands limited over or in contingency, only conveys the estates of persons having vested or contingent estates in such lands, and who, by the statute, are required to have notice of the proceedings. The rights or liens of encumbrancers who are not required to have notice, or who do not have notice of the proceedings, are not affected by the sale. The purchaser holds subject to legacies charged on the lands.

3. The Chancellor has no power to order mortgagees or other encumbrancers to be paid out of the proceeds of such sale. The act requires that the whole proceeds shall be invested at interest, and directs specifically to whom the interest shall be paid. No other disposition can be made by the Chancellor.

This cause was heard upon the separate general demurrer of Nathaniel Higgins, one of several defendants, to the bill of the complainants.

*Mr. A. Wurts,* for demurrer.

*Mr. G. A. Allen,* contra.

THE CHANCELLOR.

The bill sets forth that Leonard C. Cool, who died in 1861, by his will, dated December 19th, 1860, duly executed to pass real estate, and proved and recorded, bequeathed to William Deats $100, and to David Deats and to Josiah Deats $50 each, not to be paid in ten years; that he directed his executors to erect and keep in repair an iron fence around a certain cemetery lot, and directed that if his widow should marry again, she should be paid an annuity of $50 for fifteen years; and that the will " charged his estate with the payment of the legacies, expenses, and whatever may be necessary for carrying out the will."

The bill further states that the personal estate of the testator was consumed by the payment of his debts and testamentary expenses, except a balance of $20, ascertained by the settlement of the final account of the executors by the proper Orphans Court; that the legacies were all unpaid, and that the executors needed $500 to erect the cemetery fence as directed by the will; and that the personal estate being exhausted, there was no funds in their hands, except the residue of $20, for these purposes.

The bill further states that the testator, by his will, gave all his real and personal estate, subject to the charges in his will, to his two daughters for their respective lives, and the share of each, after her death, to her issue ; and if one should die without issue, and the other leave issue, then all to such issue after the death of the survivor ; and if both should die without issue, then the whole to go to testator's brother and sisters.

The bill further sets forth a deed dated March 28th, 1868, executed under the direction of this court by one of its special masters, to the defendant, Nathaniel Higgins. In this deed it is recited that this court, upon the petition of Anna Merriam, (who must be taken for one of the daughters and legatees of the testator,) and proceedings had under the act for the sale of lands limited over to infants or in contingency, ordered these lands to be sold in fee; that the special master made such sale to Higgins, and this had been confirmed by the court, which had also ordered the conveyance to be executed. To these proceedings, as appears by the order recited and by a specific allegation in the bill, neither the complainants nor legatees were made parties, nor had they any notice of the proceedings.

The bill is filed against Higgins, the purchaser, the two daughters of the testator and their husbands, and some other parties whose interest does not appear, and prays that the legacies and amount required for the cemetery fence may be declared a lien on the lands, and that Higgins and the other defendants, or some of them, may be decreed to pay the same, and that the same may be ordered to be paid out of the proceeds of the sale of the lands, invested under the order of this court, and for other equitable relief.

The first ground taken in support of the demurrer is, that the complainants, as executors, have no right to bring suit for the legacies or the money required for the cemetery fence.

Whatever may be the rule as to the legacies which are due to the respective legatees, and not to the executors, who are not liable for the same, except to the amount of the personal estate in their hands, yet as they are specially directed by the will to erect a fence around the cemetery lot, and no one else is either required or authorized to do it, and the amount required for it being clearly charged upon the land, the suit for it is rightly brought by the executors. As the demurrer is to the whole bill, if the bill is right in any particular, the demurrer must be overruled as too broad, and it is therefore

not necessary to determine whether the executors can maintain the suit for the legacies.

The second ground taken to sustain the demurrer of Higgins is, that neither he nor the land is liable for these claims charged on it in the will; that the land was sold by order of this court on proceedings under the act for the sale of lands limited over; that the act authorizes the Chancellor to direct the land to be sold in fee, and that it was so directed. A sale of the fee simple of the lands, free from the limitations, is what is designed to be effected by this act, and is all that is designed. A sale of the fee does not include, in the term itself, a sale free from encumbrances, but only the nature of the estate as distinguished from a life estate, a remainder, a fee tail, or any estate less than a fee simple. Land is frequently sold in fee simple subject to encumbrances, and this mode of expression is common among conveyancers and in legal proceedings, and involves no contradiction or inconsistency. The act is not framed for avoiding liens or encumbrances. It requires no process. No notice is to be given, except to such persons as are entitled to vested or prospective estates in the premises. No provision is made for notice to encumbrancers or lien claimants. The proceeding can be by petition only, and not by bill, and no subpœna or other process can be issued. The act directs the purchase money to be invested, and the interest paid to the tenants of the particular estates until the land would have vested in some one in fee, and then the principal, or the proper share of it, to be paid to such person. I think that the only intention and effect of this act is to sell the land free from limitations, and not to disturb any previous encumbrances or liens upon it, not legal estates in the land.

The act authorizes the Chancellor, when justice requires it, to direct that part of the interest only shall be paid to the tenant of the particular estate, and the residue to accumulate for the benefit of the tenant in remainder. In this case the order is to pay only part of the income to the life tenant. It is contended that the surplus may be or was intended for the

payment of these liens. The order has not been set out, but I must presume it was not for this purpose, because that is not warranted by the act.

When this act was drawn and presented to the legislature great doubts were had of the constitutional power of the legislature to authorize the sale of the estate of a remainder-man if such sale was intended for the benefit of the particular tenant at the expense of the remainder-man. It is clear that the legislature, not having power to give the property of one man to another, could not enact that in such case the title of the remainder-man should vest in the life tenant, nor burden the remainder with the debts or expenses of the life tenant. Ordering a sale of lands from which a life tenant, who is only entitled to the use or income, can receive but little, and giving him a largely increased annuity by interest double the income, would benefit him at the expense of the remainder-man, who is entitled to the lands with the natural increase in value at the termination of the preceding estate. This seemed the exercise of the same power as conveying the remainder to the life tenant, and subject to the same objections. The act only authorizes the sale where it will promote the interest of the owners of the particular *and* future estates, and when it would be the interest of any one who might own the lands in fee to sell. This limitation of the power protects the tenant in remainder. If it will injure his interest the sale must not be directed. In many cases, especially where lands are in or near growing cities, this would make the act of no avail, except for the provision in the sixth section, which provides, that the Chancellor, by accumulating part of the income for the remainder-man, may recompense him for the loss of increase in value. If this power is wisely exercised, it will prevent all injury to the remainder-man in cases where it would be the interest of the owner of the fee to sell.

Whether the scruples of the draftsman of the act were well founded or not, such are its provisions; and the part of the income directed to be accumulated cannot be used to pay encumbrances. If any part has been used for such purpose as

asserted at the argument, such use is unlawful and should be made no further. This fund is the property of the remainder-man, under protection of this court.

The decree to sell in such case operates, like all other decrees or judgments of this or any other court, only upon the rights of the parties to the suit, or where a proceeding is *in rem* as this is, upon the property, so far as authorized by law If Mr. Higgins was ignorant with regard to his rights he must, like other purchasers who purchase at a sale by a sheriff, or order of any court, who often suppose that they buy free from all encumbrances, take the property subject to all pre-existing liens and encumbrances.

The demurrer must be overruled.