## Case No. 7,465.

JONES et al. v. HABERSHAM et al.

[3 Woods, 443.] [1]

Circuit Court, S. D. Georgia. April Term, 1879.[2]

[3] [Reported by Hon. William Cranch, Chief Judge.]
[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]
[2] [Affirmed in 107 U. S. 174, 2 Sup. Ct. 338.]

W. W. Montgomery and J. R. Saussy, for complainants:

A. R. Lawton, W. S. Chisholm, and W. Grayson Mann, for defendants.

Before BRADLEY, Circuit Justice, and ERSKINE, District Judge.

BRADLEY, Circuit Justice. This is a bill filed by the heirs at law of Mary Telfair. seeking to have the devises and bequests of her last will adjudged inoperative and void, and a resulting trust in all of her estate declared in favor of said heirs, and that they may have a decree for their distributive shares thereof. The defendants demurred, and the question now arises on the demurrer. The will was made on the second day of June, 1875, when the testatrix was far advanced in years, and the probate thereof was strenuously contested, on various grounds, but was finally established on appeal by the supreme court of Georgia. The testatrix was never married, and had no relations except collaterals in the third and fourth degree. A great portion of her estate, which is alleged to have been of the value of $650,000, was given to charities.

A fundamental objection raised by the complainants to all the devises and bequests. arises on the twenty-second item of the will. which is as follows: "Twenty-Second. It is my wish. and I hereby so direct, that none of the legacies, bequests and devises in any of the clauses of this, my will. shall be executed or take effect until the building and other improvements on the lot on the corner of Gaston and Whitaker streets, and known as the 'Hodgson Memorial Hall,' which I have conveyed in trust to the Georgia Historical Society, shall be completed and entirely paid for out of my estate." It is contended that this postponement of the execution and effect of the devises and bequests violates the rule against perpetuities, and renders them inoperative and void. The bill alleges that the building and other improvements referred to were in course of construction at the time of the death of testatrix, but were not completed till many months thereafter, and whether yet entirely paid for, the complainants were not certainly informed. If not paid for. it was the only debt known to the complainants existing against said estate. The complainants concede the English rule to be. that where there is an immediate gift to trustees for a general charity, but the particular application of the fund will not of necessity take effect within any assignable limit of time, and can never take effect at all, except on the occurrence of events in their nature contingent and uncertain, the gift is valid. and the court will hold up the fund a reasonable time, and await the happening of the contingency. Reference for this is made to the cases of Attorney-General v. Bishop of Chester, 1 Brown, Ch. 444; and to Attorney-General v. Oglander. 3 Brown, Ch. 166. But the complainants question whether this rule can be applied in

Georgia; and they contend that, whether it can or cannot, there is no immediate gift of the property in the mean time, before the contingency happens. The last clause of the will, it is true, after appointing executors of the will, makes them also "trustees under the provisions of the same;" but it is contended that this does not operate as a devise to them of the real estate.

In considering this objection to the validity of the dispositions of the will, it is to be observed, in the first place, that all the gifts therein contained are immediate in form. Thus, the first item declares: "I hereby give, devise and bequeath to George Noble Jones, son of the late Noble Wymberly Jones, all that full lot of land in the city of Savannah," etc. (going on to describe it), "to him and his heirs forever." The tenth item declares thus: "I hereby give, devise and bequeath to the trustees of the Independent Presbyterian Church, of the city of Savannah, all that full lot of land," etc., going on to describe the same, and to declare the purposes for which the gift was made. It seems to us, therefore, that the gift itself is not suspended upon the completion of the Hodgson Memorial Hall, and the payment thereof; but only the execution and carrying into effect thereof. Some of the gifts are pecuniary legacies. If this view is correct, the gift of these legacies is not suspended, but only the payment thereof. This seems to us to be the intent of the testatrix. No one can read the whole will and believe that the testatrix, for one moment, had in her mind the revocation or non-operation of the gifts themselves. The memorial hall was begun at the time the will was executed, and was so far constructed as to be completed within a few months afterwards. Its plan and extent must have been designed, and its cost must, within probable limits, have been anticipated. It was her desire that the executors and trustees should finish that building, and pay for it, before the other legacies should be paid or the other donations carried into effect. If any unreasonable delay should occur in this behalf, of course it would be competent for any of the beneficiaries under the will to compel the trustees to proceed. But it being an obligation of her estate, incurred under her own directions, she wished it discharged before the other donations of her will should be carried out, and she is, therefore, emphatic on the subject. There is reason in what the counsel for the defendants say, that this provision is in effect what the law of Georgia requires or allows in all cases. Section 2451 of the Code declares that "all property, real and personal, in this state, being assets to pay debts, no devise or legacy passes the title until the assent of the executor is given to such devise or legacy." In other words, the payment of debts and the fulfillment of obligations are the first things to be executed before the devises and bequests can be carried out without the assent of the executors. The completion of this memorial hall was an obligation already incurred, and the will merely requires what the law virtually requires, or allows the executors to require, in all cases.

Before proceeding further, it may be proper to cite the provisions of the Code of Georgia on the subject of charities. The most important for the purposes of this case are the following:

Section 2468: A devise or bequest to a charitable use will be sustained and carried out in this state; and in all cases where there is a general intention manifested by the testator to effect a certain purpose, and the particular mode in which he directs it to be done fails from any cause, a court of chancery may, by approximation, effectuate the purpose in a manner most similar to that indicated by the testator.

Section 3155: Equity has jurisdiction to carry into effect the charitable bequest of a testator, or founder, or donor, when the same are definite and specific in their objects, and capable of being executed.

Section 3156: If the specific mode of execution be for any cause impossible, and the charitable intent be still manifest and definite, the court may, by approximation, give effect in a manner next most consonant with the specific mode prescribed.

Section 3157: This section specifies the subjects which are proper matters of charity for the jurisdiction of equity, corresponding nearly to the 43 Eliz.

By these provisions, it will be seen that the law of charities is fully adopted in Georgia, as far as is compatible with a free government where no royal prerogative is exercised.

We will now proceed to consider the objections which have been urged against the several charitable dispositions of the will. The first of these is contained in the tenth item, and is a gift to the trustees of the Independent Presbyterian Church of the city of Savannah, of a certain lot of land in Savannah, with the buildings and improvements thereon, upon the following terms and conditions, to wit:

"First. That the trustees of the said Independent Church shall appropriate annually out of the rents and profits of said lot and improvements the sum of one thousand dollars to one or more Presbyterian or Congregational churches in the state of Georgia in such destitute and needy localities as the proper officers of said Independent Presbyterian Church may select, so as to promote the cause of religion among the poor and feeble churches of the state. Second. This gift and devise is made on the further condition that neither the trustees nor any other officers of said Independent Presbyterian Church will have or authorize any material alteration or change made in the pulpit or galleries of the present church edifice on the corner of Bull and South Broad streets, but will permit the same to remain substantially as they are, subject only to proper repairs

and improvements; nor shall they sell or alien the lot on which the Sabbath school-room of said church now stands, but shall hold the same to be improved in such manner as the trustees or pew-holders may direct. Third. Upon the further condition that the trustees of said Independent Presbyterian Church will keep in good order and have thoroughly cleaned up every spring and autumn my lot in the cemetery of Bonaventure, and that no interment or burial of any person shall ever take place either in the vault or within the inclosure of said lot; and for the purpose of having the same protected and cared for, I hereby give, devise and bequeath my said lot in the Bonaventure cemetery to the trustees of the Independent Presbyterian Church, and their successors."

Various objections are raised to this gift, which will be considered in due order.

First. It is objected that it is void for uncertainty. This objection cannot prevail.

The appropriation of a certain sum of money annually to one or more Presbyterian or Congregational churches in the state of Georgia in such destitute and needy localities as the trustees may select, so as to promote the cause of religion among the poor and feeble churches of the state, is a definite charitable object, much more so than hundreds of cases to be found in the books which have been sustained. The circumstances under which this opinion is prepared will not allow us to cite authorities for all the conclusions to which we have arrived, and, therefore, we shall content ourselves, in most instances, by simply stating them. We can only say that on the point under consideration we have no doubt whatever. It requires but a slight knowledge of the law of charities to determine a question of this kind. Almost all charities describe their objects in general terms, indicative of the particular kind of good to be effected thereby. When this is done the charity is definite, although the particular objects are indefinite. Another object declared in this item is to keep in good order the testatrix's burying lot in the cemetery of Bonaventure. This is sufficiently definite, and is clearly authorized by the Code of Georgia (section 3157); although it was once held not to be a proper object of a charitable disposition. Perry, Trusts, § 706. It is somewhat singular that it should ever have been doubted, since the sanctity of tombs and other places of rest for the dead has always been an object of cherished regard since the establishment of Christianity, and received the peculiar care of the Roman law.

Second. Another objection made to this devise is that it is accompanied with a condition which renders it void, namely, not to allow any alteration to be made in the pulpit or galleries of the church edifice of the trustees, nor to alien the lot on which the Sabbath school-room of said church stands, but to hold the same to be improved in such manner as the trustees or pew-holders may direct.

So far as this condition is expressive of a direction to keep the pulpit or school house in repair, it is a proper charity. So far as it may be construed as a condition, as for example, a condition against changing the form of the pulpit, or alienating the land, if unlawful (which we do not affirm), it is nevertheless a condition subsequent, and cannot affect the charitable gift. It is a condition subsequent, because it relates to the future after the gift is designed to take effect.

Third. The next objection is, that the trustee named being a corporation of definite powers, not including that of holding property in trust for any other object than that connected with the church as a religious society, is incapable of receiving or administering the trust. Supposing, for the sake of argument, this to be true, still the charity will not be permitted to fail, but the court of chancery has full power to supply the want of a legal trustee. A definite charity is not allowed to fail for want of a trustee. The Code expressly says: "A trust shall never fail for the want of a trustee." Section 3195. But we are inclined to think that the corporation may administer this trust. Every religious society or church has, from the very nature of the Christian religion and Christian institutions, a missionary vocation as old as the apostolic times; and it is not foreign to its purposes to extend aid to sister churches, or to promote the cause of Christianity, and especially of the particular form of Christianity which it professes, in places of destitution or ignorance.

Another objection founded on the terms of the thirteenth item of the will, will be considered hereafter.

The next gift is contained in the eleventh item of the will, and is in these words: "Eleventh. I give and devise to the Union Society of Savannah all that lot or parcel of land in the city of Savannah on the north side of Bay street, and at or near its intersection with Jefferson street, extended or prolonged, known in the plan of said city as lot letter 'B,' with the buildings and improvements thereon, but on the express condition that said society shall not sell or alienate said lot, but shall use and appropriate the rents and profits of the same for the support of the school and charities of said institution, without said lot being at any time liable for the debts or contracts of said society." This gift is objected to on account of the condition against alienation, and because the Union Society has already a surplus of funds. The condition is nothing but a condition subsequent, and if void, does not vitiate the gift. But we are not aware that a condition against alienation annexed to property devoted to a charity has ever been held to be void. Charity property, as a general thing, cannot be alienated without the aid of the court of chancery. Its normal character is to be inalienable, and the condition only expresses that character. The court, notwithstanding the

condition, would probably, if a proper case arose, make a decree allowing it to be alienated for the good of the charity. See Perin v. Carey, 24 How. [65 U. S.] 465. The objection that the Union Society has more funds already than are needed or can be used for the purposes of its institution is not supported by the allegations of the bill. The fact that a charitable society is well managed, and does not spend its entire income, but increases, as it may occasionally, its capital, is no evidence that its sphere of usefulness may not be greatly enlarged by an accession of new capital.

The twelfth item of the will is as follows: "Twelfth. I give, devise and bequeath to the Widows' Society of Savannah, all that lot or parcel of land in Savannah on the corner of President and West Broad streets, on which the improvements now consist of four brick tenement buildings, the rents and profits of the same to be appropriated to the benevolent purposes of said society; but this devise is made on condition the said Savannah Widows' Society shall not sell or alienate said lot or improvements, nor hold the same subject to the debts, contracts or liabilities of said society." It is objected to this item that the gift is too general, being for benevolent purposes indefinitely. which are not necessarily charitable. But it is for the benevolent purposes of the donee, the Widows' Society of Savannah. By turning to the charter of this society we find that it is incorporated and made a body politic. by the name and style of the Savannah Widows' Society, for the relief of indigent widows and orphans. This is sufficiently expressive of its charitable objects. But it is insisted that this declaration of the purpose and object of the society is only a part of its name. This is doubtful; but if it were so. it would still be sufficient to show for what purpose the society was organized, and would lay the foundation of a bill, or information, in equity, to prevent a diversion of its funds to any other purpose. We think the objection is untenable.

The thirteenth item of the will contains a provision which is applicable to the tenth. eleventh and twelfth, which have been considered. It is as follows: "Thirteenth. Should either one or more of the corporate bodies or institutions named in the preceding items of my will attempt to sell, alienate or otherwise dispose of the property and estate therein devised, contrary to the terms and conditions therein set forth. or should there be any levy on the same to satisfy the debts of said corporation, then I hereby direct my executors, or legal representatives, to re-possess and enter upon said property or estate as to which the conditions may be so broken or violated, and in that event I do hereby give and devise the said property so entered upon and re-possessed unto the Savannah Female Orphan Asylum." Here is a gift over of the property devised in the three previous items

upon certain conditions subsequent. It is either valid or invalid. If valid, there is an end to the matter. If invalid, the conditions are inoperative, and the property remains as first given. This seems to us so clear that no further observation is required on the subject.

The next item is as follows: "Fourteenth. I hereby give, devise and bequeath to the Georgia Historical Society, and its successors. all that lot or parcel of land, with the buildings and improvements thereon, fronting on St. James's Square, in the city of Savannah, and running back to Jefferson street, known in the plan of said city as lot letter 'N,' Heathcote ward, the same having been for many years past the residence of my family, together with all my books, papers, documents, pictures, statuary and works of art, or having relation to art or science, and all the furniture of every description in the dwelling-house and on the premises (except bedding and table service, such as china. crockery, glass, cutlery, silver, plate and linen), and all fixtures and attachments to the same; to have and to hold the said lot and improvements, books, pictures, statuary, furniture, and fixtures, to the said Georgia Historical Society. and its successors, in special trust, to keep and preserve the same as a public edifice for a library and academy of arts and sciences, in which the books, pictures and works of art herein bequeathed and such others as may be purchased out of the income, rents and profits of the bequest hereinafter made for that purpose, shall be permanently kept and cared for, to be open for the use of the public on such terms and under such reasonable regulations as the said Georgia Historical Society may from time to time prescribe; but this devise and bequest is made upon condition that the Georgia Historical Society shall cause to be placed and kept over and against the front porch or entrance of the main building on said lot a marble slab or tablet, on which shall be cut or engraved the following words. to wit: 'Telfair Academy of Arts and Sciences,' the word 'Telfair' being in larger letters and occupying a separate line above the other words; and, on the further condition, that no part of the building shall ever be occupied as a private residence. or rented out for money, and none but a janitor, and such other persons as may be employed to manage and take care of the premises, shall occupy or reside in or upon the same, and that no part of the same shall be used for public meetings or exhibitions, or for eating, drinking or smoking; and that no part of the lot or improvements shall ever be sold, alienated or incumbered, but the same shall be preserved for the purposes herein set forth. And it is my wish, that whenever the walls of the building shall require renovating by paint or otherwise. the present color and design shall be adhered to, as far as practicable. For the purpose of providing more

effectually for the accomplishment of the objects contemplated in this item or clause of my will, I hereby give, devise and bequeath to the Georgia Historical Society, and its successors, one thousand shares of the capital stock of the Augusta & Savannah Railroad, of the state of Georgia, in special trust, to apply the dividends, income, rents and profits arising from the same, to the repairs and maintenance of said buildings and premises, and the payment of all expenses attendant upon the management and care of the institution herein provided for, and then to apply the remaining income, rents and profits in adding to the library, and such works of art and science as the proper officers of the Georgia Historical Society may select, and in the preservation and proper use of the same, so as to carry into effect in good faith the object of this devise and bequest." The charity indicated in this gift is a very meritorious one, and is authorized by the Code (section 3157), under the general class of "every educational purpose," which undoubtedly embraces public libraries. The principal objection to the gift is, that the donee, the Georgia Historical Society, is incapable of taking it. But if this were true, as before stated, where the charity is definite, the court of chancery will provide a trustee, if none is named, or if the one named is incompetent to act. It seems to us, however, that the gift to the Georgia Historical Society is not void. One ground of objection is, that whilst a general power is given to the society to take and hold goods and lands, it is coupled with a proviso that the clear annual income of such real and personal estate shall not exceed the sum of five thousand dollars; whereas the bill states that the income of the society was already between three and four thousand dollars at the time of the gift, which will increase it seven thousand dollars more. This, if the society accepted the trust, may have been cause of forfeiting its charter; but the gift would none the less be vested in it. To hold otherwise would be to render the society exempt from any inquiry on the subject at the suit of the state, for the answer would be: "We cannot hold more property than our charter allows, and, therefore, we do not." Certain things are ultra vires of a corporation: but when it has the power to hold property, and is forbidden to hold beyond a certain amount, the matter being one of degree merely, or of more and less, this is not a question of ultra vires, but of violation of its charter. A contrary rule would involve many absurdities. Suppose a corporation has no more property than its charter allows, but by an enhancement of values it grows into an excess of that allowance, to what particular portion of its property does its title become void? Is the whole affected by the vice? The answer plainly is, the title to none of it becomes void; but the corporation may be amenable to the penalty of violating its charter. In-

dividuals cannot call it in question; its tenants must continue to pay its rents, and its debtors their debts; the state alone has the right to proceed against it. The state may or may not see fit to do so. It would depend on the circumstances of the case. the greatness of the excess, the causes which led to it, etc. The state may condone the offense. The legislature may relieve by enlarging its power. In the present case the defendants contend that the Georgia Historical Society has been relieved by an amendment to its charter, passed in 1870, by which the proviso in question was repealed. The complainants insist that this amendment was unconstitutional, because the constitution of 1868 declares that the general assembly shall have no power to grant corporate powers and privileges to private companies, except to banking and other business companies named; but shall prescribe by law the manner in which such powers shall be exercised by the courts. But "corporate powers and privileges" are powers and privileges which appertain to a corporation as such; its corporate franchise is not every power that a corporation has which is a corporate power. The intent of this prohibition undoubtedly was to relieve the legislature from applications to create private corporations of a certain class, such as benevolent, religious, literary, etc. It did not take away the power to make amendments to existing charters, nor intend to give that power to the courts. Suppose there had been a general law of mortmain, forbidding all religious corporations to hold land, would the constitution prevent the legislature from repealing it? Yet, by repealing it, existing corporations would have a new accession of power—not of corporate power, but of power to hold property. We think the amendment of 1870 was valid. That a corporation may be a trustee, if not prohibited, has been frequently held. Vidal v. Girard's Ex'rs, 2 How. [43 U. S.] 127; Perin v. Carey, 24 How. [65 U. S.] 465; McDonogh's Ex'rs v. Murdoch, 15 How. [56 U. S.] 367; American Colonization Soc. v. Gartrell, 23 Ga. 448. It may be a qualification that the object of the trust should be germane to, or in harmony with, the objects of the corporation. If this is true, what more appropriate existing corporation in Georgia could have been selected as trustee for the proposed library than the Georgia Historical Society? The presence of the library would greatly promote the objects of its incorporation. The charter declares that it shall be construed benignly and favorably for every beneficial purpose therein intended. In our judgment, the gift in this case took effect in the society as trustee.

The other objections to this item, relating to the inscription to be placed on the building. etc., are not tenable. It is a laudable ambition to wish to transmit one's name to posterity by deeds of beneficence. The millionaire who leaves the world without doing any-

thing for the benefit of society, or for the advance of science, morality or civilization, turns to dust, and is forgotten; but he who employs a princely fortune in founding institutions for the alleviation of suffering, or the elevation of his race, erects a monument more noble, and generally more effectual to preserve his name, than the pyramids. Thousands of the wealthy and the noble, in the early days of English civilization are deservedly forgotten; but the founders of colleges in Oxford and Cambridge will be borne on the grateful memories of Englishmen as long as their empire lasts. Harvard and Yale, in our own country, are pertinent examples of this truth.

The seventeenth item of the will gives thirty thousand dollars to the Presbyterian Church of the city of Augusta, to be appropriated in building a commodious Sunday school house and library on a portion of its lot. We do not remember that any peculiar objections were raised to this bequest.

The twenty-first item is as follows: "Twenty-first. All the rest and residue of my estate, of whatever the same may consist, real, personal and mixed, and wherever situated, I hereby give, devise and bequeath to my executors hereinafter named, and to the survivor of them, and to the successors in this trust of said survivor, in trust, to use and appropriate the proceeds arising from the same to the building and erection and endowment of a hospital for females within the city of Savannah, on a permanent basis, into which sick and indigent females are to be admitted and cared for, in such manner and on such terms as may be defined and prescribed by the trustees or directresses provided for in this item or clause in my will. The income, rents and profits of such portion of the residuum of my estate, as may not be expended in the building, erection and furnishing said hospital, shall be annually appropriated to the support and maintenance of the same. My desire and request is that a thoroughly convenient hospital, of moderate dimensions, suited to the wants of the city of Savannah, and capable of enlargement, if necessity should require, may be built and erected, with no unnecessary display connected with it. And I do hereby nominate as first trustees, managers or directresses of said hospital, Mrs. Louisa F. Gilmer, Sarah Owens, Mary Elliott (formerly Habersham), Susan Mann, Florence Bourquin, Eva West, and Eliza Chisholm, all of Savannah, Georgia, and do request and instruct my executors to advise and consult with the ladies named as to the construction, arrangement and furnishing of said hospital. It is further my wish and desire, and I do hereby request, that a suitable and proper act of incorporation for said hospital shall be obtained from such tribunal in the state of Georgia as may have jurisdiction in the premises, to be called and known as the 'Telfair Hospital for Females,' with the ladies above named, or such of them as may consent to serve, and such others as they may apply for to be associated with them as the first trustees, managers or directresses, under said act of incorporation, with power to fill any vacancies that occur in their number. And for the purpose of accomplishing the objects contemplated in this item or clause of my will, I do hereby authorize and empower my executors, or the survivor of them, to sell and convey all, or any portion, of the real estate, or any interest in the same, which I may have, or be entitled to, and not given or devised in any of the previous items or clauses of this my will, using their discretion as to private or public sales, and to whether, and at what time, such sales shall be made." This is an important item in consequence of the amount supposed to be given for the object indicated therein. It is devoted to the building and endowment of a hospital for sick and indigent females within the city of Savannah. It is objected to for uncertainty as to the objects; for uncertainty as to the time when the hospital is to be built, and when the act of incorporation is to be obtained; for the impossibility of creating such an act under the constitution and laws of Georgia, and as being in violation of the rule against perpetuities, in that it gives the property ultimately to a corporation not yet in existence. We do not think that any of these objections can prevail. First. As to want of certainty in its objects. Surely, when the testatrix says that the hospital is intended for females within the city of Savannah, into which sick and indigent females are to be admitted and cared for, she has said all that is necessary to make it a well-defined charity. It is to be a hospital; it is to be for females in Savannah; it is to be for sick and indigent females. What more could well be said to define it? Very few charities are more definite. As to the uncertainty of the time when the hospital is to be built, and when the act of incorporation is to be obtained, no one who has read the case of Inglis v. Trustees of Sailors' Snug Harbor, 3 Pet. [28 U. S.] 99, or the more recent case of Ould v. Washington Hospital, 95 U. S. 303, can have any doubt that the gift is good. Even if it cannot be carried out in the particular manner contemplated by the testatrix, the court can and will provide proper trustees to carry it out. This is fairly within the powers given by the Code. But we cannot agree with the counsel for the complainants that the state of Georgia has, inadvertently or otherwise, deprived itself of the power of creating a charitable corporation. If the law authorizing the courts to grant charters is imperfect in this respect, it will, no doubt, be promptly amended when the defect is discovered. This is no greater or more remote contingency than that which intervenes in any case where a gift of charity contemplates a future act of incorporation by the legislature. The fact

that the property is directed to be ultimately conveyed to a corporation to be created, creates no perpetuity. The estate is given immediately to the executors and trustees, and the prosecution of the charity is to be carried on by them until the building shall be ready for delivery, and then handed over with the fund to support it to the corporation to be created; or, if none shall be created, to such trustees as the court may appoint. This creates no perpetuity as has been decided in the cases referred to, and many others that might be cited.

The twenty-third item which gives a thousand dollars to the first Christian church erected, or to be erected, in the village of Telfairville. in Burke county, or to such persons as may become trustees of the same, and a like sum to the Hodgson Institute, in the same village, are of the same character precisely, so far as objected to, with the bequest in the case of Attorney-General v. Bishop of Chester, 1 Brown, Ch. 444, which was approved by Lord Eldon in Attorney-General v. Parsons, 8 Ves. 186.

In our judgment, the gifts of this will must be sustained. We should not have thought it necessary to go so much into detail in examining the objections that have been raised, but for the ability and earnestness with which the several points were presented. The bill must be dismissed with costs.