Nov. Term,
1859.

BOGERT
v.
THE CITY
OF INDIAN-
APOLIS.

---

BOGERT *v.* THE CITY OF INDIANAPOLIS.

The charter of the city of *Indianapolis* does not empower the city council to subject to the control of the city sexton cemeteries other than those belonging to the city.

Nov. Term,
1859.

BOGERT
v.
THE CITY
OF INDIAN-
APOLIS.

PERKINS, J.—The bodies of the dead belong to the surviving relatives, in the order of inheritance, as property, and they have the right to dispose of them as such, within restrictions analogous to those by which the disposition of other property may be regulated. But as they cannot be permitted to create a nuisance by them, they may be required, where population is dense, to bury them at a certain depth, or outside of where the population is dense, or likely to become so, and within a reasonable time after death, &c., but, *it seems*, that the burial cannot be taken out of their hands—they being able and willing to perform it.

APPEAL from the *Marion* Court of Common Pleas.

*Wednesday,
November* 30.

PERKINS, J.—Suit by the city of *Indianapolis* against *Charles Bogert*, charging him with a violation of the cemetery ordinance. The only complaint filed in the case, before the mayor, was the affidavit of one *Garrison W. Allred*, that said *Bogert* did violate the ordinance in question, by entering a certain cemetery in said city, and interring therein a dead body.

A motion to dismiss for want of a sufficient cause of action, was denied.

There was judgment before the mayor against *Bogert*.

In the Common Pleas, motions to dismiss, &c., were again overruled, and the judgment of the mayor was affirmed.

Without passing upon the sufficiency of the causes of action, we proceed at once to the main questions in the suit, viz., the validity of the ordinance under which it is claimed that the suit is instituted, and can be maintained.

The city charter provides that the city council shall have power "to establish cemeteries or burial places, within or without such city, and to provide for the sanctity of the dead."

The question in the case is, what power does this provision of the charter confer upon the city council.

The second clause of the provision, to-wit, "to provide for the sanctity of the dead," may be laid out of the case. It has no reference to the subject-matter of this suit. It does not involve the questions, who shall bury the dead? and in which cemetery shall they be laid? The council may pass ordinances to punish the unauthorized disturbance of their repose, and the desecration of their resting

Nov. Term,
1859.

BOGERT
v.
THE CITY
OF INDIAN-
APOLIS.

places, no matter by whom or where, within the city limits, they were buried.

The question is, then, what power is conferred by these words, viz., "to establish cemeteries or burial places within or without such city."

It will be observed that the power conferred is alike to act under the grant within or without the city. What can be done in the premises within the city, can be done without the city.

Now, two different meanings are put upon the words above quoted from the city charter. *Bogert* contends that the words "to establish cemeteries," means to purchase, or receive by way of donation, grounds for public city cemeteries, and to devote them to that use, as the public necessity or convenience may demand.

The city council contend that the meaning is, that the council may seize upon existing private burying grounds, make them public, and exclude the proprietors from their management. In other words, that to establish means, to assume the control of that which is established.

If this be the true interpretation, then, as the city may act without or within the city, it seems to have been intended that the city council should assume the control of all the cemeteries in the county, and place them in charge of the city sexton. This, surely, the city could not do; but the city could purchase, or receive by way of donation, a tract of land without the city, and devote it to the use of the dead, and put it in the care of an agent or officer, and time will render it necessary that this be done.

Again; such a construction places the charter in conflict with the general laws of the state, while a more limited construction leaves it in harmony with them. Those laws authorize any individuals to unite themselves together for the purpose of receiving donations of lands, or purchasing the same, for cemeteries; and,

"Sec. 18. When such donations or purchases shall be made to or by any such individuals, and a certificate thereof, or conveyance therefor, together with the articles of association by which such individuals have become united

Nov. Term,
1859.

BOGERT
v.
THE CITY
OF INDIAN-
APOLIS.

for such purpose, shall be filed in the office of the recorder of the proper county, and by him recorded, such individuals shall enjoy all the privileges necessary for the preservation and protection of such cemetery, in the same manner as if such individuals were regularly incorporated by law, and such cemetery shall forever remain a burial place for the dead.

"Sec. 19. Lands conveyed to the board of county commissioners, by deed duly recorded, for the purpose of a public or private cemetery, shall be held by such board forever in trust for such purpose.

"Sec. 20. In all cases where the donors or donees of any public burying ground, shall lay the same off into lots, plainly designated by corner stones or posts, and record a plat thereof in the recorder's office, then persons interring in said burying place, shall bury within the lots so designated, and not out of them.

"Sec. 21. The donor of a private burying ground, his heirs and assigns forever, shall have the exclusive right of admitting corpses for interment, and shall direct where the same shall be buried, and may grant any right of burial in such ground, as shall not interfere with the graves already there, or the rights of persons who have buried their dead in such ground.

"Sec. 22. No burying ground specified in this act, shall pass or be held contrary to the intent or meaning of this section, by virtue of any subsequent devise, purchase, descent, or conveyance of the donor." 1 R. S. p. 461. See *id.* 513.

Now, it is not uncommon for religious and charitable societies to procure cemetery grounds for their special use. We know, historically, that close beside, or more remote from the church, or the synagogue, has usually been the consecrated churchyard, in which rested the deceased members and their children. The power claimed by the city council would entitle them to invade the privacy of these sacred inclosures, and subject burials in them to the control of the city sexton; for by the ordinance enacted, no person can enter to bury, but by his permission, to be ob-

Nov. Term,
1859.

BOGERT
v.
THE CITY
OF INDIAN-
APOLIS.

tained only by paying him the price of digging a grave; and then the body must, by § 7, be deposited in the place designated by him, thus enabling him to scatter, in different parts of the ground, the members of the same family.

The incorrectness of the meaning claimed by the city council, for the provision of the charter in question, may be further illustrated by a reference to other provisions. For example, the charter authorizes the council to establish gas works. Would it be pretended that, therefore, the council was authorized to seize the gas works already erected by a private company?

We conclude, then, that the city charter does not empower the city council to subject to the control of the city sexton, cemeteries other than those belonging to the city.

And if it did, a grave question would arise as to the validity, itself, of so much of the charter. This is a point not necessary here to be decided, and we are not, therefore, in what we say upon it, speaking for the Court. But we lay down the proposition, that the bodies of the dead belong to the surviving relations, in the order of inheritance, as property, and that they have the right to dispose of them as such, within restrictions analogous to those by which the disposition of other property may be regulated. They cannot be permitted to create a nuisance by them. Hence, a by-law might be reasonable, where population was dense, requiring those buried to be sunk to a certain depth, or to be buried outside of where population was, or was likely to become dense, and within a reasonable time after death, &c.; but we doubt if the burial of the dead can, as a general proposition, be taken out of the hands of the relatives thereof, they being able and willing to bury the same (1).

Having ascertained the law governing the case, we give its facts, as presented by the record, on which the law is to be applied.

It is agreed by the parties that the following are the facts in the case:

*Union Cemetery*, in the city of *Indianapolis*, was laid off into lots, about twenty years ago, by a company of private

individuals, who were, at the time, the owners of the ground.

Nov. Term,
1859.

BOGERT
v.
THE CITY
OF INDIAN-
APOLIS.

The lots have been sold, and deeded in fee simple, to private individuals, by the original owners.

*Henry Hobner* was the owner of one of said lots, and, in *May*, 1859, employed *Weaver* and *Williams*, undertakers, to bury a deceased child of his therein.

Pursuant to said employment, *Weaver* and *Williams* directed *Charles Bogert* to dig the grave in said lot, for the burial of said child, and he proceeded to execute the work by virtue, alone, of such direction.

For that act, he was sued by the city, and judgment given against him, under the ordinance which has been previously noted.

The proprietors have never surrendered the *Union Cemetery* to the city.

*Henry Hobner* had a right to bury his own child in his own lot, being in limits where burial was allowed, without purchasing the consent of anybody.

Since the foregoing opinion was written, an additional brief has been filed by the city, raising the question of jurisdiction, but, under the circumstances, we shall not examine it.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded, &c.

ON PETITION for a rehearing.

*Per Curiam.*—This cause was submitted by agreement; was fully and ably briefed by counsel on both sides. The question of jurisdiction was not raised.

The Court did not look into it, though it might have done so had it seen proper.

The case is a clear one on the merits. Had the Court examined the question of jurisdiction, it would have changed the result only in the mode in which the cause would have gone out of Court; that is, by dismissal, instead of reversal. A rehearing will not be granted in a case like the present, for such cause. As the question upon the ordinance was one of importance—one which

the rights of all concerned required should be finally and authoritatively settled, it was highly proper that the city attorney should, so far as he could do so, waive any point in the way of its decision.

The petition is overruled.

*N. B. Taylor*, for the appellant.

*B. K. Elliott*, for the city (2).

(1) The law of burial, in its relations to the place of interment, and the protection of the dead, is discussed with much ability and learning, in a report by the Hon. *Samuel B. Ruggles*, referee, appointed by the Supreme Court of the state of *New York*, in the matter of the widening of *Beekman* street, in the city of *New York*.

He submitted the following conclusions, as justly deducible from the fact, that no ecclesiastical element existed in the jurisprudence of the state of *New York*, or in the framework of its government:

1. That neither a corpse, nor its burial, is legally subject, in any way, to ecclesiastical cognizance, nor to sacerdotal power of any kind.

2. That the right to bury a corpse and to preserve its remains, is a legal right, which the Courts of law will recognize and protect.

3. That such right, in the absence of any testamentary disposition, belongs exclusively to the next of kin.

4. That the right to protect the remains, includes the right to preserve them by separate burial, to select the place of sepulture, and to change it at pleasure.

5. That if the place of burial be taken for public use, the next of kin may claim to be indemnified for the expense of removing and suitably reinterring their remains.

This report was brought to a hearing in the Supreme Court, in *April*, 1856, and, after argument, confirmed, in all respects, by the Court. 4 Bradf. 503 to 532.

(2) Mr. *Elliott*, for the city, cited the following authorities:

I. The amount in controversy being only five dollars, this Court has no jurisdiction. *The Board of Commissioners* v. *Chissom*, 7 Ind. R. 688.—*Levy* v. *The State*, 6 *id.* 281, and case cited.—*Bogart* v. *The City of New Albany*, 1 *id.* 38, and authorities cited.—*Common Council of Indianapolis* v. *Fairchild, id.* 315. —*Tripp* v. *Elliott*, 5 Blackf. 168.—*Thurman* v. *Hammond, id.* 66.—*Id.* 67.— *Reed* v. *Sering*, 7 *id.* 135.—*The City of Madison* v. *Hatcher*, 8 *id.* 341.—1 Chit. on Plead. 112.—Ang. and Ames on Corp. ——.—Acts of 1857, p. 56.—Perk. Pr. 321.

II. As this Court has no jurisdiction of the subject-matter of this suit, a judgment rendered by it is utterly void. How. N. Y. Code, 6.—*Doly* v. *Brown*, 4 How. 429.—*Elliott* v. *Piersoll*, 1 Pet. 328.—13 *id.* 571.—2 How. (U. S.) 43.— 3 *id.* 750, 762, 763.—*Taylor* v. *Conner*, 7 Ind. R. 115.—*The State* v. *Richmond*, 6 Foster (N. H.), 232.—*Stoughton* v. *Mott*, 13 Verm. R. 175.—*Brooks* v. *Davis*, 17 Pick. 148.—*Brooks* v. *Daniels*, 22 *id.* 498.—*Brooks* v. *Adams*, 11 *id.* 442.— *Kennedy* v. *Greer*, 13 Ill. R. 432.—Smith's Leading Cases, 821.

III. The question of jurisdiction is one that can be raised at any stage of the proceedings, and whenever a defect of jurisdiction appears, the cause must be dismissed. *The State* v. *The Whitewater Canal Co.*, 8 Ind. R. 321.—Van Santv. Pl. 725.—*Thompson* v. *The Steamboat Morton*, 2 Ohio St. R. 28.

IV. Courts cannot acquire jurisdiction over the subject-matter by the acts of parties. The question of jurisdiction is not waived by laches of a party. *The State* v. *Richmond*, 6 Foster (N. H.), 232.—*Baker* v. *Chisholm*, 3 Texas R. 157.—*Chapman* v. *Morgan*, 2 Greene (Iowa), 374.—*Thompson* v. *The Steamboat Morton*, 2 Ohio St. R. 28.—*Titus* v. *Relyea*, 8 Abbott (Pr. R.), ——.

V. When a Court has no jurisdiction of the subject-matter, it will, *ex officio*, dismiss the suit. *Bryan* v. *Blythe*, 4 Blackf. 249.—Gould's Pl. 236.—3 Bouv. Inst. 248.—*Stamp* v. *Newton*, 3 How. (Miss. R.) 34.