Detwiller v. Hartman.

JOHN J. DETWILLER, executor &c.,

v.

DAVID HARTMAN et al.

1. A trust to buy a burial plot, and erect thereon a monument to the testator's memory, to cost not more than $50,000 and not less than $40,000, and a fence to protect the monument, is valid. A testator has a right to provide for

Detwiller v. Hartman.

such things by his will, and the exercise of the right cannot be denied or abridged by the consideration of the inappropriateness of the provision, whether in view of the amount of his property or his station in life.

2. A gift of a fund to keep, with the interest, testator's "family monument and burial place" in repair, not being a charity, is void for perpetuity, and so also is a gift of a fund to equip and maintain, with the interest forever, a brass band, to be called by testator's name, which was directed to march to his grave on the recurring anniversary of his death, as well as on holidays "and other proper occasions," and there play a funeral march and other appropriate music.

3. The question whether a will was duly executed, is not within the jurisdiction of this court.

4. A gift by a codicil is not, without words showing such intention, entitled to preference over other gifts in the will, and it will therefore abate proportionately in case of deficiency.

5. Lands expressly directed to be sold by a testator in order that the proceeds may be used to pay legacies or carry out objects provided for by the will, need not be sold if the proceeds are not needed to carry out the purposes of the will.

6. After bequeathing certain gifts and funds in trust to designated persons, the testator provided that his surplus estate should be divided among them equally; and there was no other residuary provision. Some of the gifts were void.—*Held*, that the estate being insufficient to pay all the legacies and raise the trust funds, there was no surplus within the meaning of the provision, and that the testator died intestate as to the amount of the unlawful trust funds.

Bill for construction of will.   On final hearing on pleadings.

*Mr. J. M. Robeson* and *Mr. H. J. Reeder*, of Penna., for complainant.

*Mr. J. G. Shipman*, for Elizabeth Hamlin.

*Mr. F. C. Lowthorp, Jr.*, for David Hartman and others.

THE CHANCELLOR.

Wilson J. H. Bruch, of Easton, Pennsylvania, died in May, 1880, leaving a will dated in June, 1878.   By the will, after directing payment of his debts and funeral expenses, he devised and bequeathed all his property, real and personal, to his executor, John J. Detwiller, the complainant, on the following trusts:

Detwiller *v.* Hartman.

To pay certain relatives named in the will certain specified sums of money (amounting in the aggregate to $13,100) and $1,000 to any relation or relations equally near to him by blood with them, whom he might not have remembered; and if none, then the $1,000 to be divided in equal shares among the legatees previously named, or the survivors of them; to permit Mary Russel to occupy and possess and receive the rents, issues and profits of the undivided half of a certain house and lot in Phillipsburg, for life; the undivided half of the property to be sold after her decease, and the proceeds of the sale to be added to what the testator calls the cemetery fund, to purchase a burial plot of ground one hundred feet square in the Easton cemetery, and cause to be erected thereon a granite monument, the cost not to exceed $50,-000, nor less than $40,000; the plan and style of the monument to be in accordance with directions which he intended to leave or deposit with his executor if his life and health should permit; but if he should leave none, he directed the executor to call to his aid some competent architect to act in connection with the executor, and a friend of the testator's whom he names, and who is still living, and to whom he says he has made known his wishes and plans; the monument to be built according to the plan and in the style they three may adopt. And he orders the executor to cause to be erected a substantial iron fence around

Note.—Whether a bequest for a monument to the testator is valid, see *Gilmer* v. *Gilmer, 42 Ala. 9 ; Emans* v. *Hickman, 12 Hun 425 ; Frazer's Case, 92 N. Y. 239 ; Luckey's Estate, 4 Redf. 95.* See *Wilson* v. *Staats, 6 Stew. Eq. 528, note; Laird* v. *Arnold, 25 Hun 4; Menzies* v. *Ridley, 2 Grant's Ch. 544.*

The court will not, on their petition and before auditing their accounts, order executors to erect a monument to their testator, although so directed by him, *Hirst's Estate (Pa.), 12 W. N. C. 323.*

That a gift to keep a monument or tomb in repair is void, see *Thompson* v. *Pitcher, 3 M. & S. 643, 6 Taunt. 359, 369 ; Fowler* v. *Fowler, 33 Beav. 616 ; Dawson* v. *Small, L. R. (18 Eq.) 114 ; Hunter* v. *Bullock, L. R. (14 Eq.) 45 ; Birkett's Case, L. R. (9 Ch. Div.) 576 ; Hornberger* v. *Hornberger, 12 Heisk. 635 ; Piper* v. *Moulton, 72 Me. 155 ; Bates* v. *Bates (Mass.), 27 Alb. L. J. 243 ;* also *Gravenor* v. *Hallum, Amb. 643 ; Durrour* v. *Motteaux, 1 Ves., Sr. 320 ; Willis* v. *Brown, 2 Jur. 987 ; Lloyd* v. *Lloyd, 2 Sim. (N. S.) 255 ; Swasey* v. *Amer. Bible Soc., 57 Me. 527 ; Jones* v. *Habersham, 3 Woods 443, 470, Bradley, J.; 27 Alb. L. J. 294 ( U. S. S. C.), Gray, J.; Frazer's Case, 92 N. Y. 239.*—Rep.

the plot—sufficient to protect it and the monument.  He further
orders him to invest in the bonds of the United States $5,000,
and such additional sum or sums as may be set apart by him, the
testator, and the accumulations thereof, and out of the proceeds
thereof to pay all sums of money expended in keeping the " said
family monument and burial plot" and the inclosure thereof in
good repair.  He further orders that, in case his estate at his
death shall not be sufficient to pay in full the legatees and the
money for the cemetery plot and monument, and to create the
fund for repairs, the legacies and the monument and cemetery
fund shall abate proportionately.  He also orders his executor
to pay over to the inhabitants of the town of Phillipsburg, in
their corporate capacity, $10,000, to be held in trust forever by
the corporation, to pay yearly the interest thereof, or so much as
shall be necessary for the purpose, to establish and support a
military band of music, to be called The Bruch Cornet Band of
the town of Phillipsburg, whose duty it shall be to march to the
before-mentioned cemetery on the anniversary of his death, and
on such holy days (holidays) as are established by law, and on
other proper occasions, and then and there perform a funeral
march and such other appropriate music as the leader of the
band shall designate and appoint.  He further provides (by the
sixth clause) that in case there shall be any part of his estate
undisposed of after the payment of the legacies and the creation
of the trust funds, and purchase of the burial plot, and paying
for the monument and fence, the surplus be distributed *pro rata*
among the legacies and the cemetery and band funds.

He also declares that in case any of the legatees shall contest
the validity of the will, he revokes the legacy or legacies of such
objecting party or parties, and gives it or them to the inhabitants
of the town of Phillipsburg, in trust to pay the interest thereof
for the support of the common schools of that place.  He orders
and directs his executor not to pay any of the legacies until after
the executor shall have reduced all the personal and real estate
to money, or such interest-bearing securities as may be readily
convertible into money, in order that the executor may be fully
advised of the amount of the estate ; and he authorizes him to

defer selling the real estate for five years from his, the testator's, death, if he shall deem it for the interest of the estate to do so. And he directs him to invest and keep invested all his personal estate and the interest thereon until his real estate, except the property the use of half whereof is given to Mrs. Russel, shall be sold. By a codicil he bequeaths the yearly income of $5,000 to Elizabeth Hamlin, so long as she remains single, bearing that name, and directs that after her death the principal go to the cemetery fund, to keep his grave in repair.

The executor asks for a construction of the will on various points: whether the trusts for the purchase of the burial plot, the erection of a monument and the erection of the fence, for the keeping of the plot, monument and inclosure in good repair, and for the establishment and maintenance of a military band, are valid; whether the gift of $10,000 for the band is entitled to preference in payment over the other legacies, in case there should not be sufficient assets to pay all; whether the codicil was properly executed; and, if so, whether the gift to Elizabeth Hamlin therein is entitled to priority over the legacies given by the will itself; whether, in case it shall turn out that there was sufficient funds to pay the lawful legacies without selling the real estate, the executor would still be authorized to sell the property, and whether, as to any surplus after paying the debts, expenses and lawful legacies, the testator died intestate thereof, or whether it is to be distributed among the legatees under the sixth clause of the will. He also asks that he be directed as to what sum he shall expend upon the monument and fence, and what sum he shall retain to provide for repairs to the burial plot, monument and fence.

The estate of the testator, it is said, falls very short of being sufficient for the purposes which he contemplated. The legacies given by the will to his relations amount to $13,100, to which is to be added the sum of $5,000 for the legacy given to Elizabeth Hamlin by the codicil. According to the bill, the estate will not exceed $35,000. The legacies and trust funds, all together, amount to $73,100, reckoning the cost of the burial plot, monument and fence at the minimum sum fixed therefor in the

will, $40,000.   At the maximum sum, $50,000, the legacies and
trust funds amount to $83,100.   ·

The trust to buy a burial plot and erect a monument thereon
to the memory of the testator, and to provide a fence for the
plot to protect it and the monument, is valid.   To hold other-
wise would be to deny the right of the testator to dispose of his
estate.   It is conceded that a testator may make provision by
his will for the erection of a memorial to himself at his grave,
but his right to provide for one so expensive as that which this
testator contemplated, and for which he has provided in the will
under consideration, is denied.   It is obvious that if the right to
dispose of any part of his estate for the purpose exists, as it un-
doubtedly does, this court cannot limit its exercise except as the
necessities of the administration may require.

The suggestion that a much less expensive and ostentatious
memorial would be more appropriate than that for which the
testator has seen fit to provide, cannot enter into the consideration
of the matter.   The testator was the sole judge on that subject,
and his judgment is not liable to be reviewed in any court.   As
this court manifestly cannot deal with the provision as a viola-
tion of good taste, neither can it deal with it on the ground that
it is a wasteful expenditure.   As to that, too, the testator was the
sole judge.   In *Mellick* v. *President and Guardians of the Asylum,
1 Jac. 180,* where the testator (the will was made in 1784), after
giving various minute directions as to his funeral, and bequeath-
ing several pecuniary legacies, devised his freehold estates to
trustees, upon trust, to sell and apply the produce as follows:
£2,000 in erecting a monument to perpetuate his memory in the
parish church of St. John, Southwark ; £100 to Dr. Samuel John-
son on condition of his writing an epitaph for it, and twenty
guineas to the rector of the parish on his consenting to the placing
up of the monument, the master of the rolls, Sir Thomas
Plumer, said:   "Now, what are charitable uses have been
enumerated in the statute of Elizabeth and in Duke.   They are
when the donor appropriates a gift, either to charity or to some
public purpose, such as the repair of bridges, ports and havens
&c., not operating in any manner to the benefit of himself.   But

Detwiller v. Hartman.

the statute of mortmain does not bear a resemblance to anything like a sumptuary law, and does not apply to property expended like this—by the party on himself, for the gratification of his own vanity, or an object which, instead of having any similitude to charity, is the very reverse of it. The builder of the monument is to be paid for his labor only. It stands on the same footing as an expensive funeral, and it has never been argued that the expenses of a funeral cannot be defrayed out of real estate. There is nothing to control the general right, incident to property, of disposing of it, either in the party's lifetime or after his death, as he may think proper; and though the sum which this testator has devoted to the erection of his monument may be disproportioned to his station in life, the court cannot on any such grounds extend the construction of the statute." *Masters* v. *Masters, 1 P. Wms. 421; Adnam* v. *Cole, 6 Beav. 353; Mitford* v. *Reynolds, 16 Sim. 105,* and *Bainbridge's Appeal, 97 Pa. St. 482,* are also cases in which such bequests have been held valid. The testator in this case has fixed (by limitation), as he had a right to do, the amount to be expended on the burial plot, monument and fence, and his will is law on the subject. He also has provided that in case his estate should not prove sufficient to pay the legacies and raise the trust funds in full, they shall abate proportionately. The amount to be expended on the plot, monument and fence will, in the existing situation of the estate, be fixed by a very simple calculation in proportion.

The trust to provide for repairs is not valid. It is a perpetual one, and the object is not a charity. It is purely private, the keeping in repair of the testator's burial place. Though he speaks of the monument and burial place as a "family monument and burial place," they are merely his own. He appears to have had no family of his own, and they were intended for himself alone. And if they had been intended for his family it would make no difference. The gift is not to a general public use. It is not within the legal definition of a charity. · Mr. Justice Gray's well-known definition of a charity in a legal sense, is "a gift to be applied consistently with existing laws for the benefit of an indefinite number of persons, either by bringing

23

their hearts under the influence of education or religion, by re-
lieving their bodies from disease, suffering or constraint, by as-
sisting them to establish themselves for life, or by erecting or
maintaining public buildings or works, or otherwise lessening the
burden of government."

The American courts have followed the English rule against
perpetuities except where qualified by statute. Trusts created
for charitable or public purposes here, as there, are not subject to
the rule. The direction in this case does not limit the continu-
ance of the fund for repairs, and the testator makes no disposi-
tion whatever of the principal. The provision, therefore, is to
be regarded as creating a perpetuity—as locking up $5,000 for-
ever for the purpose of keeping the testator's burial place and
monument in good repair. That object is not a charity, and
therefore the bequest, because it is a perpetuity, cannot be sus-
tained. *Rickard* v. *Robson, 31 Beav. 244; Hoare* v. *Osborne,
L. R.* (*1 Eq.*) *585; Fisk* v. *Attorney-General, L. R.* (*4 Eq.*) *521;
Fowler* v. *Fowler, 10 Jur.* (*N. S.*) *648; Lloyd* v. *Lloyd, 10 Eng.
L. & Eq. 139;* and *Re Williams, L. R.* (*5 Ch. Div.*) *735,* are
cases in which such bequests have been held void as perpetuities.
See, also, *Wms. on Exrs. 1073; 2 Redf. on Wills 851; 1 Jarm.
on Wills 211.* In *Cool* v. *Higgins, 8 C. E. Gr. 308,* the execu-
tors were specially directed by the will to erect a fence around a
cemetery lot, and no one else was either required or authorized
to do it, and the amount required for it was charged upon the
land. It was held that suit for the money was rightly brought
by the executors. But there was no perpetual trust in that case.

For the same reasons just given, the trust for the establishment
and maintenance of a military band cannot be sustained. The
object is not charitable, and the trust is in express terms a per-
petuity. The purpose of the testator was to provide for the
establishment and maintenance forever of a military band of
musicians, to be called by his name, and whose sole duty it
should be to march to his grave on the recurring anniversary of
his death, and on the holidays established by law, and " other
proper occasions," and there play a funeral march and other ap-
propriate (presumably solemn) music. The sole object of this

Detwiller *v.* Hartman.

provision for a band is to keep the testator's memory alive in the public mind; not to furnish the means of education in music for the public, nor even to provide musical entertainment for them. This bequest does not differ in principle from a gift to a church to supply a choir to sing a dirge annually on the anniversary of the donor's death, and it will not be contended that that would be a legal charity.

The question whether the codicil was duly executed cannot be raised here. The subject is not within the jurisdiction of this court. *Trustees* v. *Wilkinson, 9 Stew. Eq. 141.*

The gift to Elizabeth Hamlin, in the codicil, is entitled to no preference over the legacies given by the will, but will abate proportionately with them in case of deficiency.

The direction of the testator to sell his real estate is positive. He directs that there shall be no payment of the legacies until after the sale of the real property. According to the statement of the bill as to the amount of the estate, the personal property will not provide enough to pay the valid legacies and furnish the minimum sum fixed in the will for the cost of the burial plot, monument and fence. It will, therefore, be necessary to sell the real estate, and to sell all of it, except that the use of which is given to Mrs. Russel.

Should it, however, not be necessary to sell the real estate for the lawful purposes of the will, a sale need not be made; for the testator's express object in directing that the real estate be converted into money was the complete distribution of the estate among the persons and for the objects designated in the will, and if the failure of some of those objects should render a sale unnecessary, it should not be made.

If the estate prove to be not more than sufficient in amount to pay the legacies and raise the trust funds provided for by the will, and after paying the legacies and raising the money for the lawful trusts, there be a surplus, the testator must be held to have died intestate of such surplus. It is not disposed of by the will. The sixth section provides that any surplus which may remain after payment of the legacies and trust funds, and providing for the purchase of the burial plot, and for the cost of

the monument and fence, shall be distributed *pro rata* amongst all the legatees, the cemetery fund and the band fund. There is no other residuary clause. The surplus under consideration is not that which is disposed of in the sixth clause, but is that part of the estate which is given for the unlawful trusts.