CASE 13—ACTION BY MRS. RENA NEIGHBORS AGAINST J. R. NEIGHBORS
AND OTHERS TO BE ALLOWED TO DISINTER AND REMOVE THE BODY
OF HER HUSBAND—NOV. 29.

# Neighbors and Others v. Neighbors and Others.

APPEAL FROM HARDIN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANTS APPEAL.    AFFIRMED.

DEAD BODIES—RIGHT OF WIDOW TO SELECT AND CHANGE PLACE OF
BURIAL OF DECEASED HUSBAND.

Held:   The wife and children of a deceased person have the right,
in preference to his brothers and sisters, to select the place
of burial of his body, and to change it at pleasure, in the ab-
sence of any testamentary disposition of the body.

J. P. O'MEARA, ATTORNEY FOR APPELLANTS.

W. H. MARRIOTT, ATTORNEY FOR APPELLEES.

(No briefs in the record.)

OPINION OF THE COURT BY CHIEF JUSTICE PAYNTER—REVERSING.

W. C. Neighbors was the husband of the appellee Rena
Neighbors, and the father of her coappellees.  He died No-
vember 30, 1888, and was buried in the Catholic Cemetery
near Elizabethtown.  He owned a lot in the cemetery in
which he was buried, and by the terms of his will all of
his property went to his widow, including the cemetery lot.
Mrs. Neighbors lives about nine miles from the cemetery
where his remains were buried, and it is inconvenient, if
not impossible, for her to give his grave such attention as
she desires to and should be given it.  Her home is at
Glendale, and near by is a cemetery which is suitably cared
for.  She and her children desire to remove the remains to

that cemetery. His brothers and sisters are resisting the removal. The Rt. Rev. Wm. Geo. McCloskey, Roman Catholic bishop of the diocese of Louisville, in his official capacity as bishop, holds, by deed, the title to the cemetery property in which the lot is located in which the decedent is buried. He filed an answer, in which he said he had no interest in the controversy, and declines to become a party to it; and, if the court decides that the remains shall be removed, he will promptly give orders for removal, and in so far as within him lies see that the judgment of the court is executed. So it is not a controversy between the widow and her children and the ecclesiastical authorities, but between the widow, who owns the lot in the cemetery, and her children, on the one side, and the brothers and sisters of the husband on the other. The solution of the question depends upon the determination as to who has the right, in the absence of any testamentary disposition of the husband's remains, to select a place of sepulchre, and to change it if deemed advisable. We can not look to the English common law to aid us in determining the question as to who has the right to the custody of a dead body for the purpose of burial. From an early date the ecclesiastical law governed, and conferred exclusive jurisdiction of such matters upon the ecclesiastical courts. This being true, Lord Coke (3 Co. Inst., 203) said: "It is to be observed that in every sepulchre that hath a monument, two things are to be considered, viz. the monument, and the sepulture or burial of the dead. The burial of the cadaver,—that is, '*caro data vermibus*' ('flesh given to worms'), is *nullius in bonis*, and belongs to ecclesiastical cognizance; but as to the monument action is given, as hath been said, at the common law, for the defacing thereof." This doctrine has been generally, though not universally, repudiated by

American courts.   One (if not the pioneer) opinion to that effect was delivered *in re* Beekman St., 4 Bradf. Sur. Append., 504.   The reasoning in this opinion appears to have been satisfactory to many of the courts in this country.   The current of authority in this country is to the effect that there is not a property right to a dead body in a commercial sense, but there is a right to bury it which the courts of law will recognize and protect.   This right embraces the right to select the place of burial and to change it at pleasure.   This right, in the absence of testamentary disposition of the body, belongs to the next of kin.   In this class some place the husband and wife.   In other cases, where the controversy has been between the wife and children, it was designated as being an issue between the wife and next of kin.   This perhaps is technically accurate.   Most of the adjudged cases in this country are to the effect that the husband has the right in preference to the next of kin to select the place where the wife's remains shall be buried, and that the wife has the like right as to the husband's remains.   That paramount right in the husband and wife is in consonance with the custom of the country, respected by general sentiment, and has the support of reason.   There is a tender and more affectionate relationship between husband and   wife   than   between any other relatives.   In life there is a constant companionship, a continued mutual and dependent relationship, and such ministration in sickness and death that can be given by no other.   In Larson v. Chase (Minn.) 50 N. W., 238 (14 L. R. A., 88), (28 Am. St. Rep., 370), the court said:   "The wife is certainly nearer in the point of relationship and affection than any other person.   She is the constant companion of her husband during life, bound to him by the closest ties of love, and should have the paramount right to

render the last sacred services to his remains after death." In this case the right is clearly in the mother and children to have the remains removed. When this right is exercised, it affords them an opportunity to give such care and attention to his grave as accords with the refined sentiments of a Christian people. The claim of right by the brothers and sisters to prevent the removal of the remains has no foundation in law. For an interesting discussion of the subject under consideration see Larson v. Chase (Minn.) 50 N. W., 238 (14 L. R. A., 85), (28 Am. St. Rep., 370); Hackett v. Hackett (R. I.) 26 Atl., 42, (19 L. R. A., 560), (49 Am. St. Rep., 762); O'Donnell v. Slack (Cal.) 55 Pac., 906 (43 L. R. A., 388); *in re* Beekman St., 4 Bradf. Sur. Append., 504.

The judgment is affirmed.