No. 35,271

CHARLES. CORDTS and ALVINA PAYNE, *Appellants*, v. GERTRUDE. CORDTS, TILLIE CORDTS, ARTHUR CORDTS, THE CITY OF WAMEGO, and WILLIAM CORDTS, *Appellees.*

(118 P. 2d 556)

Opinion filed November 8, 1941.

*D. C. Hill,* of Wamego, for the appellants.

*Ira C. Snyder,* of Manhattan, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action for a permanent injunction to prevent the defendants from exhuming the bodies of three persons, one the mother of all parties, the others the brothers of the parties, and reinterring them in another state. The trial court made findings of fact and conclusions of law upon which it rendered judgment in favor of the defendants. Plaintiffs' motion for a new trial was denied and they appeal to this court, assigning as error that the trial court erred in five of the twenty-five findings of fact, in its conclusions of law, in denying the motion for a new trial and in rendering judgment.

In their brief appellants present only their contentions with respect to the law governing exhumation and reinterment of dead bodies, and present no argument that the findings of fact made are not supported by the evidence. The argument substantially is that the trial court erred in its conclusions of law and in rendering judgment. We have, however, examined the findings complained of and find they are supported by the evidence.

Owing to their length and the fact findings are made covering matters of no great consequence here, we summarize them.

Cecelia Cordts and her husband Frank Cordts were married in Germany and came to this country many years ago, finally settling in the 1870's in or near Wamego, Kan. They were the parents of the plaintiffs and the individual defendants, as well as two other children, Walter who died in 1892 at the age of four, and Herman who died in 1908 at the age of thirty. Both of these children were buried on lot 188 of the Wamego city cemetery, which belonged to the mother. The parents separated about 1900 and were divorced about 1906. In 1909 Frank Cordts died and was buried in the Wamego city cemetery on a separate and distinct lot which belonged to his son Charles, one of the plaintiffs herein.

After the separation of the parents, Cecelia and her children Alvina, Tillie, Gertrude and Herman moved on a farm. Shortly after Alvina married and left the home, telling her mother she didn't need her any more, and for a period of over twenty years she did not visit her mother. Sometime about 1910 Cecelia moved to Manhattan, and about that time she had a monument erected on her lot in the Wamego cemetery on which she had inscribed the names and dates of birth and death of her deceased sons and her own name and date of birth. The family situation in Manhattan was pleasant for Cecelia and her three children, Gertrude, Tillie and Arthur, who lived with her. Her son Charles visited her occasionally, but never evidenced any particular concern or regard for her. Alvina, after the lapse of twenty years, began to visit her mother occasionally. While living in Manhattan and prior to 1926 Cecelia Cordts told some of her neighbors of her desire to remove the bodies of her sons Herman and Walter to a cemetery at Manhattan. In 1926, when seventy-six years of age, she visited California, and saw and visited Forest Lawn cemetery at Los Angeles, and immediately told her daughters, Tillie and Gertrude, her neighbors in Manhattan, and friends who visited her that she desired to be buried there, and she had her daughter inquire of a funeral director in Manhattan as to the methods of removing the remains of her sons Walter and Herman from the Wamego cemetery to California. In addition to her other property Cecelia Cordts had received $15,000 by gift from her sister and a legacy of $5,000 from her brother. Her daughter Gertrude, who was employed at a good salary, quit her position in 1931 and was thereafter the constant companion and nurse of her mother un-

til the death of the mother. About the year 1933 Cecelia Cordts conveyed all of her property to her daughter Gertrude and entered into a written contract wherein Gertrude agreed to care for her mother the balance of her life, the contract containing a provision that Gertrude should use the amount necessary, estimated at $1,000, to acquire a place of interment in Forest Lawn cemetery at Los Angeles, California, and cause the bodies of Herman and Walter Cordts and the body of Cecilia Cordts to be interred there.

Cecelia Cordts died June 25, 1939, and was buried on her lot in the Wamego cemetery. About three weeks thereafter, Gertrude told her brother Arthur she intended to make arrangements to remove the bodies to California and she set about making such arrangements and made an effort to get the voluntary consent of all the children in order to obtain requisite permits under the rules and regulations of the State Board of Health. William, Arthur, Tillie and Gertrude did consent, and requisite permits for disinterment were procured, and arrangements to have the bodies disinterred and removed to California had been made, and Gertrude was engaged in carrying out her mother's wishes when she was enjoined by order made by the probate judge at the time this action was commenced. The court further found that all expense incident to the disinterment and removal was to be paid with money provided by Cecelia Cordts and that it was her wish that all be done at some convenient time after her death.

As a matter of law the trial court concluded that the disinterment and removal would not be against public policy nor contrary to law and equity; that the restraining order should be dissolved and a permanent injunction should be denied, and it rendered judgment accordingly.

The question of the right of the next of kin or some of them, to determine the place of interment of a dead body, or if it has been buried, to cause it to be exhumed and reinterred in a different place, has not been before this court, but a reference to the authorities generally will show great contrariety of holdings.

On the general question of the right to remove a dead body, the rule is stated in 15 Am. Jur. 844:

"Each case must be considered in equity on its own merits, having due regard to the interests of the public, the wishes of the decedent, the rights and feelings of those entitled to be heard by reason of relationship or association, the rights and principles of the religious body or other institution, which

granted the right to inter the body at the first place of burial, and determining whether consent was given to the burial in the first place of interment."

That rule finds support in the cases cited in support of the text as well as in 25 C. J. S. 1017, 1019, and in articles to be found in United States Law Review, vol. 64, p. 505; Law Notes, vol. 34. p. 127; and Southern California Law Review, vol. 12, p. 435. Not all of the authorities give the same order to the factors to be considered, and speaking generally, perhaps primary importance is given to the wishes of the deceased. With respect to reinterment, it has been said the same rules apply as to the original interment, but with a presumption against removal growing stronger with remoteness of connection with the decedent and reserving always the right of the court to require reasonable cause to be shown for it. (See Jackson, Law of Cadavers, p. 110, and cases cited.)

In 25 C. J. S. 1021, it is said:

"Whether the right to disinter will be permitted to be exercised depends on such considerations as the expressed wishes of the deceased as to the place of interment of his remains; the wishes of the surviving spouse or the next of kin, although such wishes are not always final; the rules of the cemetery where made part of the contract of purchase of the plot; the tenets and usages of the religious body conferring the right of burial, although such ecclesiastical rules and regulations are not controlling, at least, where they come into conflict with equitable principles; and other matters."

Some states have statutes which expressly control. See *In re Eichner's Estate,* 18 N. Y. S. 2d 573, 173 Misc. 644, where, by reason of statute, the testator's wish was held to be paramount to all other considerations.

In the case before us there is no question, as sometimes arises, of the tenets of a religious body, or of a contract with the cemetery, or of any statutory regulation. We have no statutory provision applicable. Insofar as public policy is concerned, we have no declared public policy, and under all of the facts of this case it is difficult to discern that public policy is much involved. It is clear from the record what Cecelia Cordts wished done with her body and the bodies of her children, and that her daughter, to whom she entrusted the performance, was endeavoring to carry out the wish. No one contends the bodies should be separated and that even though the mother's may be removed, the children's may not. If the wishes of the next of kin were to control, we would hesitate to say that a majority of them could impose their wish on the minority, but we have no hesitancy in saying that those closely affiliated with and

devoted to the decedent in her lifetime are to be preferred to those not so closely affiliated or devoted. The record makes it clear that those seeking the injunction are in the latter class.

The trial court considered this case in equity and on its own merits, and concluded the daughters Gertrude and Tillie should not be enjoined from carrying out their mother's wishes respecting her burial in California. It has not been demonstrated the trial court erred in its findings of fact or that it abused its discretion in reaching its conclusions, and its judgment is affirmed.

ALLEN, J., dissents.