60 N.J. Super. 353 (1960)
159 A.2d 142
CLARA RENGA AND SALVATORE RENGA, HER HUSBAND, PLAINTIFFS,
v.
SANDRA SPADONE AND EMIL SPADONE, HER HUSBAND, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 16, 1960.
*355 Mr. David Weinick, attorney for plaintiffs.
*356 Mr. Sidney Lipstein, attorney for defendants (Messrs. Lipstein & Lipstein).
Mr. George Warren, guardian ad litem, pro se.
MINTZ, J.S.C.
The parties to this proceeding are tenants in common of parcels of real estate located in Newark, New Jersey, which they took as remaindermen under the will of Antonio Giuliano. He died in 1928. They have contracted to sell one of the properties. The sale was approved and confirmed by an order of this court entered August 6, 1959. In this summary proceeding they now seek an adjudication that they have a good and marketable title to all the properties free from any charge imposed thereon under the will of Antonio Giuliano.
Testator's will was construed in West Side Trust Co. v. Giuliano, 106 N.J. Eq. 475 (Ch. 1930), where it was held that the will gave Pasquale Giuliano, the testator's nephew, a life interest in the residue of the estate; the remainder was to pass to Pasquale's issue if they survived him. Pasquale died in 1953 survived by issue, the parties to this litigation. The executor, West Side Trust Company, was discharged in 1951.
The present proceeding involves a construction of paragraphs Thirteenth and Fourteenth of the will which read as follows:
"THIRTEENTH: I hereby order and direct my said nephew, PASQUALE GIULIANO, to expend at least the sum of Five Thousand Dollars and not more than the sum of Ten Thousand Dollars for the erection of a mausoleum, which said mausoleum shall contain at least six and not more than eight vaults, niches or compartments.
It is my earnest wish and desire, and I hereby order and direct my said nephew, PASQUALE GIULIANO, to have removed from her present resting place the remains of my first wife, MARGHERITE GIULIANO, and place them, together with my remains, in the vaults, niches or compartments respectively to be reserved therefor in said mausoleum.
*357 FOURTEENTH: In the event of the death of my said nephew, PASQUALE GIULIANO, then and in that event I hereby order and direct my Executor hereinafter named to carry out the provisions of paragraph thirteen of this my will."
The mausoleum was never erected. The personal property in Antonio's estate had an inventory value in 1929 of $25,082.96, but when liquidated in 1932 only $16,539.02 was realized. Taxes, legacies, legal fees and the testator's debts reduced this sum to $3,242.72, from which counsel fees and executor's commissions were to be deducted. Thus, there was never enough cash or personal property from which cash might be available to construct the mausoleum.
The evidence showed that the present minimum cost of erecting the type of mausoleum specified in the will is $19,600, plus the cost of the cemetery plot estimated between $2,000 and $2,500. The cost of perpetual care of the mausoleum, if desired, would add another 10% to 15% to the total. A two-niche mausoleum and plot would cost over $15,000, exclusive of maintenance charges.
Plaintiffs seek judgment that the directions in paragraph Thirteenth of the will are impossible to perform; that the premises in question and any other real property owned by the testator and passing under the will be freed of any charge, lien, right or claim for the erection of the mausoleum; that they have a good marketable title without any charge imposed by paragraph Thirteenth; and that the court direct the setting aside of enough money to erect suitable headstones.
Vice-Chancellor Backes in West Side Trust Co. v. Giuliano, supra, 106 N.J. Eq., at page 478 said:
"The provision in the will that the nephew Pasquale Giuliano expend not less than $5,000 nor more than $10,000 for a mausoleum was not intended to charge him personally with the obligation and to make it a condition to his gift. The inadequacy of his life interest alone forbids that interpretation. The testator intended to empower him to bind his estate and confided to his judgment the manner of fulfilling this sacred wish. That it was purely a confidence is emphasized by another request or direction that the nephew *358 remove to a niche in the mausoleum the remains of the testator's first wife. The executor and trustee will provide the funds."
The opinion does not settle the issues now presented 30 years later, namely, whether a trust was created or a charge imposed on the realty for the erection of the mausoleum.
A testator may direct that his property be used for the embellishment of his grave and can charge his real estate for such purpose. See Detwiller v. Hartman, 37 N.J. Eq. 347 (Ch. 1883); Cool's Executors v. Higgins, 23 N.J. Eq. 308 (Ch. 1873). Generally, personalty is the primary fund from which legacies are payable. The real estate is not charged with the payment of legacies unless the testator's intent that it should be is expressly declared or can be fairly and satisfactorily inferred. Johnson v. Poulson, 32 N.J. Eq. 390 (E. & A. 1880); 5 N.J. Practice (Clapp, Wills and Administration), Sec. 174, p. 407 (1950).
In his will Antonio left residuary gifts of mingled real and personal property. Where a charge is found in such situations, it is often held that both forms of property were meant to be encumbered. E.g., Merritt v. Merritt, 48 N.J. Eq. 1, 8 (Ch. 1891), affirmed o.b. 51 N.J. Eq. 638 (E. & A. 1893); Clapp, supra, sec. 174. Indicating a contrary intent is the fact that at his death in 1928 the testator left about $25,000 in personalty. This was sufficient for all his legacies and debts, the inheritance taxes, reasonable legal fees, and the building of his tomb. The extent of his personalty is entitled to weight in determining the testator's intent, even where he has mingled real and personal property in dealing with the residue of his estate. See Johnson v. Paulson, supra, 32 N.J. Eq., at pages 395-396. Although it need not be expressly determined, it would appear that the testator under all the stated circumstances did not intend to charge the remaindermen's interest in real property.
As already observed, the court in the earlier opinion refers to the provision in the will as a "confidence" and a "sacred wish"; and further states that "the executor and *359 trustee will provide the funds." These expressions seem to negate the existence of a charge and point toward the existence or creation of a trust. Admittedly, nowhere in the will is a trustee appointed or a trust created. But in Gallagher v. Venturini, 124 N.J. Eq. 538, 541 (Ch. 1938), the court construed an analogous paragraph in a will directing the annual purchase of flowers for a grave and held that the executor should be trustee of a sufficient sum for that purpose. However, the direction in the will sub judice may also be considered as creating an "honorary trust," one in which the trustee may carry out the direction of the testator but cannot be compelled to do so. Scott on Trusts, sec. 124, pages 621-31.
Assuming, arguendo, a trust was created, it would seem that the intent of the testator was to limit the obligation to the personalty since at the time of his death he had ample personal property from which to carry out his direction to construct the mausoleum. He did not anticipate that the depression of the early 1930's would shrink the value of these assets rendering performance of this direction impossible.
It matters not whether the testator created a charge or a trust. The result is the same. A trustee is under no duty to comply with the terms of the trust where compliance is impossible. Wilber v. Asbury Park National Bank, etc., 142 N.J. Eq. 99, 113 (Ch. 1948), affirmed sub. nom. Wilber v. Owens, 2 N.J. 167 (1949). The court may relieve an executor from the duty to carry out a provision in a will where adherence to it would defeat the testator's intention. Compare Palisades Trust & Guaranty Co. v. Probst, 128 N.J. Eq. 332 (Ch. 1940). It is impossible to construct the specified mausoleum for the sum of $10,000. To expend over $20,000 for such purpose would thwart the testator's intention.
Additionally, the erection of a mausoleum at this date necessarily presupposes the disinterment of the remains of decedent and his first wife. The right of a decedent *360 respecting the disposition of his body after death and the duty of the executor in that respect are considered in Fidelity Union Trust Co. v. Heller, 16 N.J. Super. 285, at page 290 (Ch. Div. 1951), where the court said:
"* * * This right is merely a personal right and is not regarded as testamentary in character. The general rule is that although not essentially testamentary, and legal compulsion may not attach to them, the wishes or directions of a decedent as to his interment are entitled to a respectful consideration and have been allowed great weight. `It always has been, and ever will continue to be, the duty of courts to see to it that the expressed wish of one, as to his final resting place, shall, so far as it is possible, be carried out.'"
After interment a body is in the custody of the law and removal or disturbance of such a body is subject to the jurisdiction of a court of equity. This power should not be exercised unless it be clearly shown that good cause and urgent necessity for such action exist. Petition of Sheffield Farms Co., 22 N.J. 548, 556 (1956). The bodies of the testator and his first wife have been interred for over 30 years. There is no urgent necessity to disturb them. Compare Petition of Sheffield Farms Co., supra; Guerin v. Cassidy, 38 N.J. Super. 454 (Ch. Div. 1955). Presumably, none of their next of kin have evidenced any desire to disinter the remains and place them in a mausoleum.
While it is true, where impossibility is caused by the fault of the trustee he is not allowed to profit, cf. Scott, sec. 165, at page 833, that principle is inapplicable here. It does not appear that failure to erect the mausoleum was caused by the fault of Pasquale. In any event, the obligation to erect a mausoleum was never imposed on the parties to this proceeding.
The parties agree that suitable tombstones should be erected for the testator and his two wives. The estimated cost for such memorials is between $1,500 and $2,000. They agree to deposit in escrow with the attorney for the plaintiff the sum of $2,000 to insure the erection of suitable tombstones *361 for the graves of Antonio Giuliano and his first and second wives, Margherite and Clara, in St. Mary's Cemetery in Newark, New Jersey, and to provide for perpetual care. They further agree to erect the tombstones within 60 days from the receipt of the proceeds from the sale of the property and so to advise the court. In all of the stated circumstances the voluntary offer of all the parties to this proceeding appears to be a practical expedient solution.
The real estate devised to the parties to this proceeding is adjudged freed of any charge, lien, or claim for the erection of a mausoleum. Judgment will be entered in accordance with the views herein expressed.