JACQUELINE HICKEY AND GOETHALS-THALLEMER FUNERAL HOME v. JON HICKEY.

[No. 3-173A4. Filed June 29, 1973. Rehearing denied August 16, 1973.]

Patrick Brennan, Michael Scopelitis, Patrick Brennan and Associates, of South Bend, William T. Means, Bingham, Loughlin and Means, of Mishawaka, for appellants.

H. Theodore Noell, of South Bend, for appellee.

I.

STATEMENT ON THE APPEAL

STATON, J.—Jon Hickey sought a permanent injunction from the St. Joseph Circuit Court to restrain his sister-in-law, Jacqueline Hickey, from disinterring and removing the body of his brother, Melvin J. Hickey, from Highland Cemetery. After a hearing on Jon Hickey's application for permanent injunction on May 3, 1972, the court took the matter under advisement. On June 28, 1972 a permanent injunction was granted restraining Jacqueline Hickey from disinterring and removing the body of Melvin J. Hickey. Jacqueline Hickey's motion to correct errors raises the following issues:

1. Was the trial court's decision contrary to law?
2. Was there sufficient evidence to grant injunctive relief?
3. Was the trial court's decision contrary to the evidence?

Our opinion concludes that the trial court's decision was not contrary to law. There was sufficient evidence to grant injunctive relief and support the trial court's judgment. We affirm the trial court's judgment in our opinion which follows.

II.

STATEMENT OF THE FACTS

Jacqueline and Melvin Hickey were married on January 13, 1968. During the brief period of their marriage, the Hickey's lived apart on several occasions. Melvin Hickey was residing

with his parents at the time of his death. He died of a heart attack on December 31, 1968. Jacqueline Hickey was notified of her husband's death the following day by Jon Hickey, brother of the deceased. Jon Hickey took his brother's widow to the funeral home to make arrangements for the funeral. Mrs. Hickey picked out a casket and signed a funeral purchase record, but she made no express arrangements as to the place of burial. Melvin Hickey was buried in the Hickey family plot in Highland Cemetery. Burial and gravestone expenses were paid by the Hickey family. The cost of the funeral service was paid by Jacqueline Hickey in June, 1970 after the funeral home filed suit to collect this unpaid bill. In July, 1970, one and one-half years after her husband's death, Jacqueline Hickey purchased two plots at the Southlawn Cemetery with the intent of having her husband's body moved from the Highland Cemetery to Southlawn. On December 28, 1970, Mrs. Hickey obtained a disinterment permit from the Indiana State Board of Health. Jon Hickey filed his application for a temporary restraining order and permanent injunction. The St. Joseph Circuit Court granted a permanent injunction restraining Mrs. Hickey from moving the body of her husband to Southlawn Cemetery. Jacqueline Hickey's motion to correct errors was overruled and on appeal raises the issues set forth below.

## III.

## STATEMENT OF THE ISSUES

The three issues presented by this appeal are:

1. Was the trial court's decision contrary to law?
2. Was there sufficient evidence to grant injunctive relief?
3. Was the trial court's decision contrary to the evidence?

## IV.

## STATEMENT ON THE LAW

ISSUE ONE: The question of a wife's right to disinter her deceased husband's body once it has been interred is one of

first impression in Indiana. Several Indiana cases, although not involving disinterment, have stated that there is a limited property right in the bodies of the dead belonging to the surviving relative in the order of inheritance. *Bogert* v. *The City of Indianapolis* (1859), 13 Ind. 134; *Renihan* v. *Wright* (1890), 125 Ind. 536, 25 N.E. 822; *Meek* v. *State* (1933), 205 Ind. 102, 185 N.E. 899 and *Aetna Life Insurance Co.* v. *Burton* (1938), 104 Ind. App. 576, 12 N.E.2d 360. The Appellate Court of Indiana stated in *Aetna Life Insurance Co.* v. *Burton, supra,* 104 Ind. App. at 581, 12 N.E.2d at 362:

". . . *For the purpose of preservation and interment* the surviving widow (in the absence of prior disposition by the decedent of his body) is entitled to possession of the dead body and the law recognizes and will protect such right from unlawful invasion and for violation of such right will compensate the feelings of the surviving widow by way of damages. . . ." (Our emphasis.)

Jacqueline Hickey contends that this primary right of "preservation and interment" extends to a right to change the place of burial over the wishes of her deceased husband's brother. She asserts that having complied with the requirements set out in IC 1971, 23-14-1-25, Ind. Ann. Stat. § 21-1022 (Burns 1964), she has ". . . a right, as a matter of law, to disinter and remove her husband's body in order to reinter it in a burial plot of her chosing [sic]."[1]

Other jurisdictions have been reluctant to grant disinterment and removal without a showing of "laudable purposes,"[2] "good cause and urgent necessity,"[3] "extreme exigency"[4] or "controlling public reason or superior private right."[5] See also *Smith* v. *Shepherd* (1903), 64 N. J. Eq. 401, 54 A. 806; *Litteral* v. *Litteral* (1908), 131 Mo. App. 306, 111 S. W. 872;

1. Kentucky alone follows the view that the right to select the place of burial embraces the right to change the place of burial at pleasure. *Neighbors* v. *Neighbors* (1901), 112 Ky. 161, 65 S.W. 607.

2. *Choppin* v. *Labranche* (1896), 48 La.Ann. 1217, 20 So. 681.

3. *Renga* v. *Spadone* (1960), 60 N.J. Super. 353, 159 A.2d 142.

4. *Thompson* v. *Deeds* (1895), 93 Iowa 228, 61 N.W. 842.

5. *In re Ackermann* (1908), 124 App.Div. 684, 109 N.Y.S. 228.

*Yome* v. *Gorman* (1926), 242 N.Y. 395, 152 N.E. 126; *Vaughan* v. *Vaughan* (1936), 294 Mass. 164, 200 N.E. 912; *Theodore* v. *Theodore* (1953), 57 N.M. 434, 259 P. 2d 795; and *Atkins* v. *Davis* (1961), Tex. Civ. App., 352 S.W.2d 801.

Indiana adopts the majority view and holds that Jacqueline Hickey does not have an absolute right to disinter her deceased husband's remains as a matter of law. Mechanical compliance with IC 1971, 23-14-1-25, *supra,* is preliminary authority subject to the rights of others who may wish to seek relief from the proposed disinterment. Once relief is sought in the courts, as was done in the present case, the right to disinter is within the sound discretion of the trial court. The trial court's decision to entertain Jon Hickey's application for a permanent injunction was not contrary to law.

ISSUE TWO: Jacqueline Hickey's second contention of error is that Jon Hickey is not entitled to injunctive relief on the grounds that he failed to show ". . . irreparable injury for which there would be no adequate remedy at law. . . ." It is well-established in the United States that disinterment and removal is within the province of equity. *Pettigrew* v. *Pettigrew* (1904), 207 Pa. 313, 56 A. 878; *Bunol* v. *Bunol* (1930), 12 La. App. 675, 127 So. 70; *Cordts* v. *Cordts* (1941), 154 Kan. 354, 118 P. 2d 556, *Currier* v. *Woodlawn Cemetery* (1949), 300 N. Y. 162, 90 N.E.2d 18; and *Fischer's Estate* v. *Fischer* (1954), 1 Ill. App. 2d 528, 117 N.E.2d 855. The granting or refusing to grant an injunction in Indiana is within the sound discretion of the trial court, and this Court on appeal will not reverse such judgment unless there has been a clear showing of abuse of discretion. *Weis* v. *Cox* (1933), 205 Ind. 43, 185 N.E. 631; *City of East Chicago* v. *Chicago and Calumet District Transit Company, Inc.* (1963), 134 Ind. App. 631, 190 N.E.2d 565. Melvin Hickey's mother died after his burial. She was buried next to her son in the family burial plot. There is no showing of possible damage to the adjoining grave; however, the non-

existence of provable damages does not prevent the granting of an injunction. *Burton* v. *Sparks* (1941), 109 Ind. App. 531, 36 N.E.2d 962. *Irreparable injury* does not necessarily mean that the injury must be very great. *Newell* v. *Sass* (1892), 142 Ill. 104, 31 N.E. 176; *Warehouse Distributing Corp.* v. *Dixon* (1933), 97 Ind. App. 475, 187 N.E. 217. The granting of an injunction to restrain a surviving widow from removing her deceased husband's remains once buried has been held proper in *Peters* v. *Peters* (1887), 43 N. J. Eq. 140, 10 A. 742; *Litteral* v. *Litteral* (1908), 131 Mo. App. 306, 111 S. W. 872; *Stiles* v. *Stiles* (1920), 113 Misc. 576, 185 N. Y. S. 53 and *Curlin* v. *Curlin* (1921), Tex. Civ. App., 228 S. W. 602. We cannot say that the trial court abused its discretion in granting a permanent injunction to protect Jon Hickey's interest in having the remains of his deceased brother and mother left undisturbed.

ISSUE THREE: Jacqueline Hickey's final contention of error is that there is insufficient evidence to support the trial court's granting of a permanent injunction. This Court will not weigh the evidence nor resolve questions of credibility of witnesses. We will look only to that evidence and the reasonable inferences therefrom which support the trial court's judgment. *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N.E.2d 669; *Wm. J. & M. S. Vesey, Inc.* v. *Hillman* (1972), 151 Ind. App. 388, 280 N.E.2d 88; *Rudd* v. *Anderson* (1972), 153 Ind. App. 11, 285 N.E.2d 836. If the judgment of the trial court is sustainable on any theory it must be affirmed. *Ross* v. *Review Board of Indiana Employment Security Division* (1962), 243 Ind. 61, 182 N.E.2d 585; *Lewis* v. *Burke* (1968), 143 Ind. App. 696, 242 N.E. 2d 382.

Many factors have been recognized in other jurisdictions to be considered before disinterment by the widow will be allowed. We would adopt the three factors set forth in *Nolan* v. *Nolan* (1961), La. App., 125 So. 2d 792, 795, adding one additional factor: (4) If the disinterment would in any way conflict with

the deceased's religious beliefs and those of his family, the trial court may take such religious beliefs into consideration to determine the question of disinterment. In *Nolan* v. *Nolan, supra,* 125 So. 2d at 795, the three factors considered by the court were:

". . . (1) whether the initial selection of the resting place was made with deliberation and without mental reservation that at some future time removal might be desired; (2) whether there are evidences of such antagonism and hostility between the surviving spouse and the owners of the tomb or burial plot as would prevent the surviving spouse from visiting the grave freely and without embarrassment or humiliation; and (3) whether the deceased spouse had evidenced a preference for one location as opposed to the other. . . ."

See also *Pettigrew* v. *Pettigrew* (1904), 207 Pa. 313, 56 A. 878, 880; *Yome* v. *Gorman* (1926), 242 N. Y. 395, 152 N.E. 126, 128 and *Theodore* v. *Theodore* (1953), 57 N. M. 434, 259 P. 2d 795, 797. The record in the case before us does not disclose whether Jacqueline Hickey considered the burial place of her husband to be temporary at the time of burial. It was not until one and one-half years later that she made known her desire to have her husband's body removed from the Hickey family plot. Although Jacqueline Hickey did not expressly consent to the burial of her husband at Highland Cemetery, the doctrine of laches has been held decisive in barring removal in other jurisdictions. See *Petition of Guggenheim* (1936), 249 App. Div. 653, 291 N. Y. S. 467 and *Mitty* v. *Oliveira* (1952), 111 Cal. App. 2d 452, 244 P. 2d 921. There is no evidence in the record of any interference with Mrs. Hickey's visiting the gravesite or of previous antagonism between the parties. Jacqueline Hickey testified:

"Q. Now, during the period of your marriage did you maintain contact with your husband's family?
"A. Yes.
"Q. Was there any antagonism between you and the family that you know about or can enumerate to the Court?
"A. Not that I know of right now."

Melvin Hickey died intestate. No preference was indicated by him as to his place of burial. He was a Lutheran. His religious belief opposed the cremation of his remains. After the funeral home had filed suit against Jacqueline Hickey to collect the cost of the funeral services, Jacqueline Hickey called Jon Hickey's wife and told her that she would like to have Melvin Hickey's body cremated. There is conflicting evidence concerning Jacqueline Hickey's mental state upon learning of her husband's death;[6] however, we find that there is sufficient evidence to affirm the trial court's judgment.

## V.
## DECISION OF THE COURT

The trial court's decision to entertain Jon Hickey's application for a permanent injunction was not contrary to law. Jacqueline Hickey did not have an absolute right to disinter her deceased husband's remains as a matter of law. Mechanical compliance with IC 1971, 23-14-1-25, *supra,* is preliminary authority subject to the rights of others who may wish to seek relief from the proposed disinterment. Once relief is sought in the courts, as was done in the present case, the right to disinter is within the sound discretion of the trial court.

The granting or refusing to grant an injunction in Indiana is within the sound discretion of the trial court, and this Court on appeal will not reverse a judgment granting an injunction unless there has been a clear showing of abuse of discretion. There was sufficient evidence produced to support the judgment of the trial court. Irreparable injury does not mean that the injury must be great or devastating.

---

6. Removal has been allowed where there was a showing that initial consent was not freely given or that the party seeking removal thought the burial was temporary. *Application of Inzero* (1951), 278 App. Div. 945, 104 N.Y.S.2d 810; *Brake* v. *Mother of God's Cemetery* (1933), 251 Ky. 667, 65 S.W.2d 739; *Bunol* v. *Bunol* (1930), 12 La.App. 675, 127 So. 70.

The trial court's judgment was not contrary to the evidence. The factors to be considered by the trial court should include where applicable:

1. whether the initial selection of the resting place was made with deliberation and without mental reservation that at some future time removal might be desired;

2. whether there are evidences of such antagonism and hostility between the surviving spouse and the owners of the tomb or burial plot as would prevent the surviving spouse from visiting the grave freely and without embarrassment or humiliation;

3. whether the deceased spouse had evidenced a preference for one location as opposed to the other; and

4. whether disinterment would in any way conflict with the deceased's religious beliefs and those of his family.

The judgment of the trial court should be and the same hereby is affirmed.

Hoffman, C.J. and Sharp, J., concur.

NOTE.—Reported at 298 N.E.2d 29.