BUNOL v. BUNOL

———

(March 24, 1930. Opinion and Decree.)

———

Spearing & Mabry, of New Orleans, attorneys for plaintiff, appellant.

Delvaille H. Theard, of New Orleans, attorney for defendant, appellee.

JANVIER, J. Plaintiff is the widow of a soldier who, on January 6, 1918, died of meningitis while in camp at Alexandria, La. Defendant is the mother of the deceased soldier.

The body is at the present time interred in the family tomb of deceased's mother. His widow, plaintiff, having finally saved or otherwise secured sufficient funds to purchase a burial plot and to erect a tomb thereon, desires, through this proceeding, to force the mother to permit the removal of the remains to the newly erected tomb.

Defendant, through an exception of no cause of action, secured a dismissal of the suit, and the widow is now before us on appeal from that judgment.

An exception of no cause of action necessarily admits the truth of the allegations of the petition, and we must therefore consider those allegations in an endeavor to determine whether, assuming that all that plaintiff says is true, she is entitled under the law to the relief she seeks. She alleges that she is the widow of the deceased; that he died in camp; "that at the time the Health Authorities of New Orleans refused to allow the body to be taken to petitioner's home due to the cause of death of petitioner's husband and ordered same to be buried direct from the railroad station; that at the time petitioner did not own a tomb or lot and under the circumstances above recited was unable to make arrangements for temporary interment by providing for the rental of a vault; that at the time petitioner not owning a tomb, she consented to have the body interred in the tomb of defendant, situated on lots 79 and 80 of section 90, situated in Metairie Cemetery wherein the body is at present, but such interment was intended by petitioner to be temporary and not permanent; that this interment was never intended by petitioner to be permanent, but merely a temporary disposition of the body until she made provisions for its permanent interment;" that she was financially unable to arrange for a tomb of her own for several years, but finally did so and that, in October, 1924, the tomb was completed; that she thereupon sought the permission of the defendant to remove the remains and that such permission was refused; "that petitioner is unable to visit the present tomb in peace as frequently she comes in contact with the family and Mrs. Leontine Barrere Bunol whose manner is such as to clearly indicate that petitioner's presence is not desired, which manner forces her to depart from the tomb, on one occasion petitioner so departing waited until Mrs. Leontine Barrere Bunol and her family had left the tomb and then petitioner returned that she might be there in peace, only to again be disturbed by the said Mrs. Leontine Barrere Bunol and her family by their returning a second time; that the said Mrs. Leontine Barrere Bunol, also, brought suit against petitioner relative to the rights of petitioner in the estate of her said deceased husband which shows the hostile attitude of the said defendant to petitioner; that due to these unfriendly actions and the hostile attitude of Mrs. Leontine Barrere Bunol to petitioner and the fact that petitioner practically from the time of her husband's death has saved from her small means sufficient to pay for a lot and the

erection of a tomb thereon that she might place therein her deceased husband's remains and due to the fact that if her deceased husband's remains are not placed in the tomb provided by her, that she upon her death will not be buried with him, your petitioner is entitled to the possession of the remains of her said deceased husband. That said Mrs. Leontine Barrere Bunol is the owner and exercises full control over the tomb in which petitioner's deceased husband was interred."

It is conceded that, upon the death of a husband or wife, the surviving spouse has a right superior to any next of kin to select the burial place. In Ruling Case Law the principle is stated as follows:

"It is generally conceded that on the death of a husband or wife, the primary and paramount right to possession of the body, and to control the burial or other legal disposition thereof, is in the surviving spouse, and not in the next of kin." 8 R. C. L., Dead Body, II, 5.

But it is argued that, where the surviving spouse has once given consent to the interment in a certain spot, or tomb, then, as stated by Baudry-Lacantinerie (2d Ed.) Successions, vol. 2, No. 2127, p. 613:

"The designation (of place of burial), once made, is final; and the person who has made the choice cannot change the place of burial against the will of the other relatives."

The law seems to be well settled · that, whereas the surviving spouse is vested with the initial right of the selection of the place of sepulture of the deceased, the right to require subsequent removal of the remains does not exist, unless such removal is made necessary by unusual circumstances. As it is expressed by Fuzier-Herman, Repertoire de Droit Francais, verbo "Inhumation et Sepulture," vol. 24, p. 242, No. 93:

"Granting that on principle the husband has the privilege of controlling the mortal remains of his wife, and of determining where they shall rest, if the deceased has expressed no preference in that regard, the right is not absolute, and does not justify the husband in exacting after the first interment, that the remains of his wife should be transferred to a new tomb, unless the removal is made necessary by meritorious considerations of a paramount character."

Fuzier-Herman cites with approval the following from Kiggen's case, Tribunal of the Seine, August 4, 1858, Sirey for 1859, vol. 2, p. 165:

"It has been adjudged that, once the burial has taken place in a suitable location, with the consent of the surviving husband, he has no legal right to demand the disinterment of the remains of his spouse, against the wishes of the members of the family (especially, of the decedent's father and mother) to remove them to another location."

In Pandectes Francaises, Repertoire, verbo "Inhumation," vol. 36, No. 173, p. 115, we find:

"When a person has been interred in a suitable place, with the consent of the surviving spouse, the latter cannot, against the wishes of the family, cause the remains to be disinterred."

But, in all the authorities, and throughout the citations from the commentators, we find the doctrine that the right of the surviving spouse to remove the remains from the place of the first interment is only denied if there has been consent to the selection of the place of initial interment, and if there is no paramount necessity for removal. With reference to the right to remove· to a permanent resting place, unless the surviving spouse has consented to the location of the initial spot, we find, in Ruling Case Law, "Dead Bodies," vol. 8, p. 692:

"If a man consents to the burial of the body of his deceased wife in the lot of another, he cannot after burial, enter on the lot and remove the body."

· And in Corpus Juris, "Dead Bodies," vol. 17, p. 1141, sec. 10, appears the following:

"Ordinarily, the surviving spouse of a deceased married person, who has consented to the burial of the deceased in a certain place, cannot afterward remove the remains against the will of the next of kin. * * *"

See, also, Cyc., "Dead Bodies," vol. 13, p. 271, where it is said:

"Where the interment takes place by the consent, express or implied, of those most nearly interested, it is regarded in law as a final sepulture, and the courts will not, as a rule, allow a disinterment against the will of those who have the right to object."

It appears, then, that plaintiff should not be deprived of the right to remove the remains of her husband to the tomb erected by her, unless she consented to the selection of the tomb owned by his mother, as the place of final sepulture.

We do not think that the allegations of the petition show that such consent as plaintiff gave to the interment was freely given, or that she intended or understood that the interment in.that tomb was more than temporary.

All the circumstances surrounding the giving of consent should be considered in determining whether it was freely given.

If the allegations of the petition be true —and we must so assume—she was not permitted, even momentarily, to bring her husband's remains into her home and to have them to herself for even an instant, and she was a young widow, too poor "to make arrangements for temporary interment by providing for the rental of a vault." Under these conditions and in this heart-rending dilemma it was only natural that, when the family tomb was offered to her, she gratefully accepted the offer as the only way of escaping the terrifying thought of burying her husband in a pauper's grave. Can it now be said that, because she did not at that time bargain with her mother-in-law and stipulate for the retention of the right to later remove the remains of her dead husband, she, by her failure, lost that right? At any rate, we are unable to say it.

The allegations show that at all times she felt that the burial place was only temporary, and that the removal would be effected as soon as financial conditions made it possible.

We do not intend in any sense to hold that the defendant used undue influence in securing from plaintiff such consent as was given by her, but merely that she was in no condition to realize that such consent as she did give might forever prevent her securing for interment in her own tomb the remains of her husband. If her consent, once given, could not have been withdrawn, she should have thought carefully over the possible effect of allowing her husband's remains to be interred in the family tomb of her mother-in-law. As Publius Syrus, a famous Roman thinker, puts it:

"Deliberandum est diu quod statuendum est semel." (That should be considered long which can be decided but once.)

But she was overwhelmed by her grief and was incapable of rational, calculating thought. We are told by Seneca, another Roman philosopher:

"Levis est dolor qui capere consilium potest." (Light is the grief which is able to take counsel.)

But, in addition to our belief that the

consent was not freely given and that she at no time intended to agree that the interment should be permanent, we feel that there is another reason why the exception of no cause of action should have been overruled, and that is, that cases of this kind, above all others, should be fully and completely tried, because no one of them is like any other one. Each contains facts entirely different from those involved in all others. As is said in Ruling Case Law, vol. 8, pp. 691 and 692:

"But there is no universal rule governing the right of removal. Each case must be considered in equity on its own merits. * * * Thus a surviving spouse may be permitted to remove the body of the deceased husband or wife under proper circumstances, as where the wife's original interment was understood to be only temporary, or where from family hostility * * * the widow could not be buried beside the husband."

The evidence, if permitted to be introduced, may show a most imperative need for the removal of the remains to the home built especially for them, and even defendant admits that removal is justified where there is an overpowering necessity therefor. If defendant and her blood relatives interfere with plaintiff in her freely visiting at the tomb of her husband, this in itself creates a grave necessity for the removal requested. A loving wife, whose hopes of future earthly joy are dashed upon the rocks of mortality, should not be deprived of such melancholy happiness as she may be able to derive from the indulgence of her grief in retrospective contemplation, and if she feels that, as the immortal Thomas Hood puts it, "a little weeping would ease my heart," she should not be sacrilegiously disturbed in her sad rites. It is true, as La Fontaine tells us: "The miserable should be sacred."

We feel that no harm can come to any one from a full investigation of the situation which is presented, and that a trial on the merits should be allowed, because it appears to us that there are sufficient allegations in the petition to permit of the introduction of proof, which proof, if available, will warrant a judgment for plaintiff.

The judgment appealed from is therefore annulled, avoided, and reversed, and the matter is remanded to the district court for further proceedings according to law, and not inconsistent with the views herein expressed.