JANVIER, Judge.
For the third time in the thirty-two years of judicial life of the author of this opinion there is presented in this Court the question of the right of a widow to remove from the burial place into which they were first put the mortal remains of her deceased husband and to transfer them to another burial place which, at his death, she was unable to provide but which, since, she has found herself able to procure.
And for the third time it has become the duty of this author to set forth the views of this Court on this question which is most distressing since whatever our views may be, in each case our decision must cause heartache to some.
The plaintiff is the widow of John T. Nolan to whom she had been happily married for seven years when he died at The Charity Hospital in New Orleans, on October 13, 1956, at the age of 74. Plaintiff was the second wife of Nolan who, by his first marriage, had three daughters who survived him. During the seven years of their marriage Nolan and his wife, the present plaintiff, had resided with plaintiff’s sister since they had no home and no income from labor or investments and were forced to rely upon a very meager return from social security in addition to which they received five dollars a week from the “carpenters”, which we understand is a labor union of which Nolan had been a member. They owned no tomb or burial plot, and, at *794 Nolan’s death, Mrs. Catherine Nolan, the widow of his brother Matthew Nolan, suggested that he be interred in her plot alongside his brother. This offer was accepted by plaintiff and her husband was placed there with his deceased brother.
About one year, or possibly a little longer after this initial interment, plaintiff secured a few hundred dollars from burial insurance and a burial allowance apparently from his labor union, and she decided that she would like to acquire a burial plot of her own and to transfer the remains of her husband so that at her death she might be buried in that same plot alongside him. This burial plot was in the same cemetery and only a short distance from that in which her husband had been interred. She requested from her sister-in-law permission to remove her husband’s body. This permission was refused and this suit is the result.
There was judgment refusing permission and dismissing the suit, and plaintiff has appealed.
When, in Bunol v. Bunol, 12 La.App. 675, 127 So. 70, we were first called upon to consider such a question we were amazed to find that similar questions have arisen in innumerable jurisdictions and that French commentators have discussed problems closely akin to that which we found in the Bunol case and which was also presented in Bradley v. Burgis, La.App., 25 So.2d 753, and which is now again before us.
From those various discussions and decisions, most of which we discussed in the Bunol and the Bradley cases, we reached, and have now confirmed, the conclusion that the usual rule is that, where the deceased spouse has expressed no preference as to place of burial, the surviving spouse has the right to determine the final resting place of the remains of the deceased spouse and that when that right has been deliberately exercised, the surviving spouse may not remove the remains to some other place against the wishes of other members of the family who may, to some extent, have a right to object unless there is some impelling or overpowering reason for a transfer.
In the Bunol case we quoted the following from Baudry-Lacantinerie (2 Ed.), Successions, vol. 2:
“The designation (of place of burial), once made, is final; and the person who has made the choice cannot change the place of burial against the will of the other relatives.” [12 La. App. 675, 127 So. 71.]
In addition to the objections of other family members, that public policy also is involved is indicated by decision of our Supreme Court in Choppin v. Labranche, 48 La.Ann. 1217, 20 So. 681, 682, 33 L.R.A. 133. There our Supreme Court said:
“ * * * With due regard to the-sentiment on that subject, as well as public policy, courts have enjoined dis-interments, * *
The Court also said:
“* * * To disturb the mortal remains of those endeared to us in life-sometimes becomes the sad duty of the living. But, except in cases of necessity, or for laudable purposes, the sanctity of the grave should be maintained,, and the preventive aid of the courts may be invoked for that object. * * ”
In addition to this early decision of the Supreme Court in which the question of public policy is mentioned, we know that traditionally the removal of an interred body from one place to another has not been favorably looked upon by'public authorities. And by chance we found a most interesting reference to this situation in a remarkably well written book, “The Biography of Dr. Rudolph Matas”, in which the author refers to the'“cumbersome legal machinery” which was required where such a removal was desired, and stated that it was very difficult to secure permission for *795 ■such removal where the original interment had been “a perpetuité.”
We thus begin a discussion of the facts presented here with a realization that public policy frowns upon such removals and that consideration should also ■be given to three different questions: — (1) whether the initial selection of the resting place was made with deliberation and with•out mental reservation that at some future time removal might be desired; (2) wheth•er there are evidences of such antagonism -and hostility between the surviving spouse and the owners of the tomb or burial plot as would prevent the surviving spouse from visiting the grave freely and without embarrassment or humiliation; and (3) whether the deceased spouse had evidenced a preference for one location as opposed to the other. We have not attempted to arrange these conditions in order of importance.
In the Bunol case there was obviously no opportunity for the surviving spouse to deliberately determine whether or not the immediate interment which was required by the public authorities was to be permanent, and, furthermore, there was the rapidly developing hostility of the deceased husband’s family.
In the Bradley case there was unusually tremendous hostility toward the daughter-in-law who was the-surviving spouse, made evident by actions and statements of the father of the deceased husband which indicated that it was impossible for the surviving spouse to visit the place of interment of her deceased husband with that undisturbed tranquillity which is so important on such occasions.
Here the selection may not have been made after mature deliberation, but, except for the grief which practically always ensues on such occasions, there was nothing to indicate that the plaintiff did not realize that her deceased husband was being permanently interred alongside his brother.
There was not only no hostility toward the plaintiff by the defendant, but, in fact, the plaintiff herself testified that she was not in the least disturbed on any of her visits to her husband’s grave, and the record^further shows that the defendant not only indicated a willingness to have the plaintiff, at her death, interred alongside her husband, but even executed a document giving that permission and filed this document with the cemetery authorities.
While there is some disagreement as to whether or not the deceased had indicated a preference as to his burial place, the record rather convinces us to the effect that he had indicated a desire to be interred alongside his brother in the burial place in which he now rests.
We think that the necessary requirements for removal have not been shown.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.