488 So.2d 1134 (1986)
Herman Q. BYRD, et ux., Plaintiffs-Appellees,
v.
Judy Caldwell BYRD, et al., Defendants-Appellants.
No. 17798-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1986.
Writ Denied July 1, 1986.
*1135 Paul B. Wilkins, Columbia, for plaintiffs-appellees, Herman Q. Byrd and Irene Byrd.
Howard N. Nugent, Jr., Alexandria, for defendant-appellant, Judy Caldwell Byrd.
Before HALL, C.J., and FRED W. JONES, Jr. and SEXTON, JJ.
SEXTON, Judge.
Plaintiffs, parents of Richard Hugh Byrd, brought suit against his wife, Judy Caldwell Byrd, for removal of his remains from the Fellowship Cemetary in Caldwell Parish. From an adverse judgment, defendant appeals, specifying two trial court errors. We affirm.
Defendant and decedent were married on April 8, 1984. On May 1, 1984, Richard Hugh Byrd was involved in a fatal automobile accident.
Following notification of the death of the decedent, his remains were transported to Riser Funeral Home in Columbia, Louisiana. A meeting of interested family members, including Herman Byrd, the decedent's father, and Judy Byrd, was held to discuss funeral arrangements in the office of the funeral director, Neil Riser. At this time, Mr. Byrd expressed his son's desire to be buried in the Old Cedron Cemetary in Natchitoches Parish next to his grandfather. Mr. Riser advised the parties that the spouse had the legal authority to select the place of interment. Mr. Byrd did not contest the matter further and the deceased was buried in accordance with defendant's wishes at Fellowship Cemetary in Caldwell Parish.
Plaintiffs filed suit on December 12, 1984 to have the remains of the deceased removed from Fellowship Cemetary in Caldwell Parish and laid to rest in the Old Cedron Cemetary in Natchitoches Parish, Louisiana.
At the trial of the matter, after hearing all of the evidence presented, the trial court decreed that the remains of the decedent be exhumed and buried in the Old Cedron Cemetary in Natchitoches Parish. In support of this ruling, the trial judge stated that the evidence established that the decedent had given "other directions" concerning his interment. The trial judge determined that plaintiffs did not forfeit their right to carry out their son's wishes concerning his interment by acquiescing in his burial at Fellowship Cemetary because Mr. Byrd expressed his son's desire at the funeral home and the trial court felt that Mr. Riser was cloaked with sufficient authority that Mr. Byrd could justifiably rely on his opinion.
Defendant initially contends that the trial court erred in its finding that the deceased gave other directions as to his final burial *1136 place. Additionally, she contends that his parents are estopped from removing his body by their passive agreement allowing plaintiff to determine the final place of interment.
The law regarding the right to control the disposition of the remains of a deceased person is set forth in LSA-R.S. 8:655 as follows:
§ 655. Right of disposing of remains
The right to control the disposition of the remains of a deceased person, unless other directions have been given by the decedent, vests in and devolves upon the following in the order named:
(1) The surviving spouse, if not judicially separated from the decedent;
(2) The surviving children of the decedent;
(3) The surviving parents of the decedent;
(4) The surviving brothers and sisters of the decedent.
LSA-R.S. 8:659 provides with respect to the permission required for the removal of human remains:
§ 659. Permission to remove remains
The remains of a deceased person may be removed from a cemetary space with the consent of the cemetary authority and the written consent of one of the following, in the order named, unless other directions have been given by the decedent:
(1) The surviving spouse, if not judicially separated from the decedent;
(2) The surviving children of the decedent;
(3) The surviving parents of the decedent;
(4) The surviving brothers and sisters of the decedent.
If the required consent cannot be obtained, a final judgment of the district court of the parish where the cemetary is situated shall be required.
These statutes, which were enacted in 1974, essentially codify the jurisprudence existing at that time. Only three cases dealing with similar issues, each of which was authored by Judge Janvier of the Fourth Circuit, were decided prior to enactment of the statutes. Since the time of their enactment, no cases have been decided construing their meaning.
In Bunol v. Bunol, 12 La.App. 675, 127 So. 70 (La.App.Orl.Cir.1930), the right of a surviving spouse to choose the site of burial was recognized as superior to that of the next of kin. After a review of the work of scholarly French commentators, the court noted that in all of the authorities, and throughout the citations from the commentators, the doctrine that the right of the surviving spouse to remove the remains from the place of first interment is only denied if there has been consent to the selection of the place of initial interment and if there is no paramount necessity for removal. In Bunol, the wife was allowed to move the body of her deceased husband. The court found that there was no showing that the interment was other than temporary, and the hostility between the husband's family and the wife kept her from visiting the grave.
In Bradley v. Burgis, 25 So.2d 753 (Orl. Cir.1946), the court held that although the widow had given consent to the selection of the initial burial place, conditions had arisen which made it practically impossible for the widow to visit the tomb without being constantly reminded of the hostility between herself and the members of her husband's family. Accordingly, the wife was allowed to remove the remains of her husband to a resting place of her own selection.
In Nolan v. Nolan, 125 So.2d 792 (La. App. 4th Cir.1961), the court expressed the usual rule that where the deceased spouse has expressed no preference as to the place of burial, the surviving spouse has the right to determine the final resting place of the remains of the deceased. The court found that when that right has been deliberately exercised, the surviving spouse may not remove the remains to some other place against the wishes of other members of the family who may, to some extent, have a right to object unless there is some *1137 compelling or overpowering reason for a transfer. In Nolan v. Nolan, the court noted that public policy frowned upon such removal and held that
"... consideration should also be given to three different questions: (1) Whether the initial selection of the resting place was made with deliberation and without mental reservation that at some future time removal might be desired; (2) whether there are evidences of such antagonism and hostility between the surviving spouse and the owners of the tomb or burial plot as would prevent the surviving spouse from visiting the grave freely and without embarrassment or humiliation; and (3) whether the deceased spouse had evidenced a preference for one location as opposed to the other."
After applying these factors to the facts at hand, the Nolan court found that the necessary requirements for removal had not been shown. The court noted that there was nothing in the record to indicate that the plaintiff did not realize that her husband was being permanently interred next to his brother. There was also no hostility toward the plaintiff by the defendant. Further, the court found that the record "rather convinces us to the effect that [the deceased] had indicated a desire to be interred alongside his brother in the burial place in which he now rests."
While these cases are not precisely on point, they are instructive in their expression of the strong public policy against the disinterment of human remains. With this public policy in mind, we must determine whether under the circumstances of this case, the deceased gave "other directions", within the meaning of the statute, as to the disposition of his body upon death.
We must first address the question of whether the "other directions" requirement of the statute is susceptible of oral proof. The jurisprudence of other states with similar statutes or jurisprudential requirements offer some guidance on this point.
In the decision of In re Bower, 17 Misc.2d 936, 187 N.Y.S.2d 270 (S.Ct.1959), the court had occasion to construe a statute providing that a person has the right to direct the manner in which his body shall be disposed of after his death. The court held that whether directions pursuant to this statute had been given would be a question of fact to be determined under the ordinary rules of evidence and that parol or nonformal dispositions, if proved, would be equally as valid under this statute as directions given by formal instrument.
In Holland v. Metalious, 105 N.H. 290, 198 A.2d 654 (1964), the court held that in the ordinary case, instructions by a decedent, by will or otherwise, with respect to the disposition of his body for funeral services or burial, should be respected and followed in preference to the opposing wishes of his survivors. Likewise, in Rosenblum v. New Mt. Sinai Cemetary Association, 481 S.W.2d 593 (Mo.App. 1972), the court found that although Missiouri courts had not previously addressed the question as to whether a deceased person, other than by will, had the right to determine in their own lifetime the place of burial, the court recognized that such express desires, whether oral or in writing, were entitled to consideration and substantial weight, in the light of all facts attending their utterance or publication. Furthermore, in Novelli v. Carroll, 278 Pa.Super. 141, 420 A.2d 469 (1980), the court held that a specific statement of desire by the decedent could also be important in deciding whether to permit reinterment. "Thus a decedent's express testamentary wish to be buried in the place of original interment will be a strong factor against reinterment, as will evidence of the decedent's religious beliefs that he should be buried in a particular place or manner."
We find these cases to be persuasive, and conclude that the "other directions" requirement of our statute at issue here constitutes a fact question which may be competently proven by parol evidence.
Herman Byrd testified that his son was extremely close to his maternal grandfather and told him at his grandfather's funeral in 1977 that he wanted to be buried by his grandfather in the Old Cedron Cemetary *1138 in Natchitoches Parish, Louisiana. That cemetary was part of Herman Byrd's father's property before it was deeded as a cemetary. Herman's father was buried there as well as the rest of Herman's family.
Additionally, the deceased's father testified that, in a discussion a couple of weeks before the son's death concerning the father's age and his inability to perform certain manual labor, the subject of his son's preference as to a burial site also arose. Byrd stated that during this discussion his son laughed at him and stated "... I'll be buried down there by Pa and you'll still be around...."
Likewise, Irene Byrd, Richard's mother, stated that she talked to Ricky in her home in the summer of 1983 about where he wanted to be buried. She stated that at that time he told her that he wanted to be buried next to "Pa," his grandfather, in Old Cedron Cemetary at Vowels Mill community in Natchitoches Parish. Additionally, his sister, Rhonda Byrd, testified that Ricky told her he wanted to be buried next to "Pa."
Judy Byrd testified that soon after they were married the deceased expressed a desire to be buried next to her. She also stated that he told her on April 27 or 28, 1984 in a telephone conversation that he wanted to be buried with her. Donnie Faye Pringle, Judy Byrd's sister, testified that she told the deceased that "... if you become part of the family you know you are gonna be out there at Fellowship with all of us poor folks." She stated that Ricky replied that he did not care as long as he was with Judy.
The trial court had the opportunity to view the demeanor of these witnesses and assessed their credibility in favor of the deceased's family, finding that they had shown that Richard Byrd had given "other directions" as to his burial place thereby causing the deceased's spouse's signature to be unnecessary for the removal of his remains. We discern no manifest error in this finding. Therefore, it will not be disturbed by us on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Plaintiff next contends that, having remained silent when she chose the place of sepulture, the deceased's parents are estopped from moving the remains.
Equitable estoppel is defined as the effect of voluntary conduct of a party which should preclude him from asserting rights against another because the other party has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975); American Bank & Trust Company v. Trinity Universal Insurance Company, 251 La. 445, 205 So.2d 35 (1967); Confederate Welding v. Bank of the Mid-South, 458 So.2d 1370 (La.App.2d Cir.1984), writ denied 462 So.2d 1264 (La.1985). Founded upon good faith, the doctrine is designed to prevent injustice by barring the party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence. American Bank & Trust Company v. Trinity Universal Insurance Company, supra.
Thus, there are three elements of estoppel: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. Wilkinson v. Wilkinson, supra; Lamb v. Lamb, 460 So.2d 634 (La.App.3d Cir.1984), writs denied 462 So.2d 1249, 1250 (La.1985).
Since estoppel bars the normal assertion of rights, courts apply the doctrine cautiously. American Bank v. Trinity, supra. Estoppel is not favored in our law. Wilkinson v. Wilkinson, supra; City of Bossier City v. Usery, 356 So.2d 1099 (La. App.2d Cir.1978).
Here defendant has not shown that the father's silence upon being told that the spouse had the authority to choose the final resting place was a representation of his intention to refrain from asserting his son's preference for a burial site. Moreover, if the father's silence could be construed *1139 as manifesting such an intent, defendant has not proven that she relied on this silence, changing her position to her detriment. Consequently, having failed to prove an essential element of the doctrine, it cannot be invoked to bar plaintiffs' assertion of rights. This specification lacks merit.
The defendant also contends that the trial court erred by failing to include the cemetary authority in its judgment. Defendant claims that the cemetary authority is an indispensable party to the litigation.
We disagree with this contention. The statute clearly requires the consent of the cemetary authority only in those cases where the decedent left no direction for the disposition of his remains.
Having found no merit to either of defendant's appellate contentions, we affirm. All costs of this appeal are assessed against appellant.
AFFIRMED.