Judgment rendered July 16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,319-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ANDREW SOBOLAK                           Plaintiff-Appellant

versus

SCARLETT SOBOLAK                         Defendant-Appellee

* * * * *

Appealed from the
Thirty-Ninth Judicial District Court for the
Parish of Red River, Louisiana
Trial Court No. 38,400

Honorable Luke D. Mitchell, Judge

* * * * *

WEEMS, SCHIMPF, HAINES & MOORE          Counsel for Appellant
By: Kenneth P. Haines

HOLLAND J. MICIOTTO LAW OFFICE           Counsel for Appellee
By: Holland J. Miciotto

* * * * *

Before STONE, THOMPSON, and MARCOTTE, JJ.

**STONE, J.**

Andrew Sobolak ("Andrew") and Scarlett Sobolak ("Scarlett") are the parents of a deceased minor child whose remains are interred at Clear Springs Cemetery ("Clear Springs") in Red River Parish, Louisiana. Andrew filed a petition against Scarlett seeking authorization to have the child's remains exhumed and relocated to an alternative cemetery. After a bench trial, the court ruled in favor of Scarlett — effectively denying Andrew's request. This appeal followed.

## FACTS

On July 2, 2022, thirteen-year-old Lyla Sobolak ("Lyla") died as a result of a four-wheeler accident and was buried in Clear Springs five days later. Matthew Pickett ("Matt"), Scarlett's brother, notified Andrew of Lyla's death.

Andrew and Scarlett were divorced in 2015 and continued to amicably co-parent Lyla and shared equal custody. According to Andrew he and Scarlett remained "friends" who "saw each other every day" and even "went on vacations" together. He considered Scarlett a member of his family despite their divorce and further described their relationship as "wonderful co-parents."

On July 7, 2022, just as the family limousine (in which he was a passenger) arrived at the cemetery, Andrew claims he learned — for the first time from Scarlett — that funeral attendees were congregated by the tree where Lyla's accident occurred and not on Matt's property as he believed.

Andrew testified that he believed Scarlett's family would provide plots next to Lyla for him (and his son) in the event of his death if he consented to Lyla's burial at Clear Springs. Andrew initially visited Lyla's gravesite weekly but expressed that over time, he could not continue due to his feelings of emotional trauma. On September 12, 2023, Andrew filed a lawsuit seeking a court order to remove and relocate Lyla's remains to what he considers a "more agreeable" resting place in Bossier Parish.

By the day of trial, the relationship between Andrew and Scarlett (and her family) was strained, and had deteriorated to the point that Andrew claims he was prevented from visiting Lyla's grave in peace.

There has been at least one altercation between Andrew and Scarlett's current husband, Chris McMellon ("Chris"), at Lyla's gravesite occurring in October of 2023. At trial, when asked whether he had ever met Chris, Andrew answered in the affirmative and began to describe the details of that altercation. Counsel for Scarlett lodged an objection as to the "relevance" of Andrew's testimony, which the trial court sustained. The trial court, however, acknowledged the evidence and record of a restraining order in effect that showed the existence of some hostility between Andrew and Scarlett (and her husband). The trial court also noted the absence of any evidence of hostility prior to the filing of Andrew's petition.

In an undated letter, Andrew obtained the consent of a Clear Springs representative to exhume Lyla's remains — which was admitted into evidence. The trial court ruled in favor of Scarlett, denying Andrew authorization for the disinterment. Andrew now appeals from that judgment,

asserting that he did not consent to Lyla's final resting place and, as her father, should be allowed to relocate her remains.

## DISCUSSION

### *Interment – Consent vitiated by fraud or error*

Andrew asserts that the trial court should have found that his original consent to Clear Springs for Lyla's interment was vitiated by Scarlett's failure to disclose the location of the accident in relation to the proposed burial site. Citing La. R.S. 8:655 (A) (5) — which provides that the right to control and authorize the interment of their deceased child belongs to the surviving parents — Andrew contends that he has the right to consent to the burial location of his child. He further asserts that since key facts were omitted from his consideration, his consent was vitiated by error or fraud (by omission).

Specifically, Andrew maintains that Scarlett's nondisclosure of the proximity of the magnolia tree to the actual gravesite is akin to fraud and further alleges that Scarlett misrepresented information regarding available plots next to their child's plot at the cemetery. Andrew insists that had he known the truth about either of these facts, he would not have agreed to his daughter's burial there.

Consent is vitiated by error, fraud, or duress. La. C. C. art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. C. C. art. 1949. Error may concern a cause when it bears on the nature of the contract or any other

3

circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation. La. C. C. art. 1950. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. La. C. C. art. 1953.

Andrew fully consented to Lyla's burial at Clear Springs and his assertions that his consent was vitiated by error or fraud (by omission) are unconvincing. Every witness' testimony — including Andrew's — and the document(s) presented and introduced at trial are consistent with Andrew's consent, particularly given his active involvement in the planning of Lyla's funeral. The record is clear that Andrew had access to the same resources as the child's mother, such as accident reports, general information, and discussion (where he could have easily ascertained the proximity of the magnolia tree to the cemetery plot). We deem it unreasonable and inconsiderate for Andrew to assign to Scarlett the *sole* responsibility of informing him of all matters concerning Lyla's death while in the midst of her own grief. Moreover, Andrew attended the funeral service and interment of his daughter without vocalizing any objection or disapproval to Scarlett or to Clear Springs. The record is devoid of any actions Andrew took to contest the burial at that time.

We are unaware of any advantage or benefit attributed to Scarlett by Andrew as she, too, was mourning the devastating loss of their child. Arguably, Andrew's grief seems to have exacerbated his anger regarding ongoing familial issues with Scarlett — and perhaps, serves as a catalyst in

4

seeking to relocate their daughter's remains.   This assignment is without merit.

### Disinterment -  Relocation of a body

Believing his consent was vitiated, Andrew argues that Scarlett, alone, could not have authorized the burial at Clear Springs without a court order. He therefore maintains that he is entitled to designate another resting place in Bossier Parish.

La. R.S. 8:659 (A) (4) provides, in pertinent part, that the remains of a deceased person may be moved from a cemetery space to another cemetery with the consent of the cemetery authority *and* the written consent of the surviving parents of the decedent.   If the required consent cannot be obtained, a final judgment of the district court of the parish where the cemetery is situated shall be required. La. R.S. 8:659 (B).

A trial court's decision regarding the disinterment of a deceased person requires the exercise of discretion and will not be reversed on appeal in the absence of a showing that this discretion was abused.  In determining whether an abuse of discretion has occurred, we must recognize that exhumation of a body is *not* favored in the law and is *against* public policy, except in cases of necessity or for laudable purposes. 25 *CJS Dead Bodies* § 4(1) (1966); *Travelers Ins. Co. v. Welch*, 82 F. 2d 799 (5th Cir. 1936); *Choppin v. Labranche*, 48 La. Ann. 1217, 20 So. 681 (1896); *Nolan v. Nolan*, 125 So. 2d 792 (La. App. 4 Cir. 1961). *Spiess v. Greenwood Dev. Co., Inc.,* 542 So. 2d 810 (La. App. 3 Cir. 1989).

Another factor that must be considered is whether the party asserting the right to disinterment freely consented to the initial placement and with the understanding that the interment place selected was to be permanent. *Bunol v. Bunol*, 12 La. App. 675, 127 So. 70 (La. App. Orl. Cir. 1930); *Bradley v. Burgis*, 25 So. 2d 753 (La. App. Orl. Cir. 1946); *Nolan v. Nolan*, *supra.*

In ruling against Andrew, the trial court adopted the three-pronged test articulated in *Nolan, supra*. in its determination on whether to disinter Lyla, which includes: (1) whether the initial selection place was made with deliberation and without mental reservation that at some future time removal might be desired; (2) whether there are evidences of such antagonism and hostility between the surviving parents as would prevent a surviving parent from visiting the grave freely and without embarrassment or humiliation; and (3) whether the decedent had evidenced a preference for one location as opposed to the other.

First, Andrew's argument that his consent was vitiated falls short, as the record supports that Andrew agreed and permitted the interment of Lyla at Clear Springs with an understanding it would be her permanent resting place and his (and his son's) permanent resting place as well. Furthermore, by Andrew's own testimony, he freely visited Lyla's gravesite for more than a year without incident and without any feelings of emotional trauma. Andrew submits that there is a lack of testimony regarding hostility or antagonism between the parties; however, there was evidence of some hostility shown at trial of an existing restraining order against Andrew. Lastly, it is undisputed that the minor child, Lyla, expressed no burial

6

preference to either Andrew or Scarlett during her lifetime; and as such, they would make that determination.

To unearth the remains of our dearly departed can sometimes become a sad duty of the living. But, except in cases of necessity, or for laudable purposes, the sanctity of the grave should be maintained, and the preventative aid of the courts may be invoked for that object. *Choppin v. Labranche, supra.* Ultimately, the trial court found that Andrew failed to meet his burden in establishing any compelling reason for the removal of his daughter's remains. We agree.

## CONCLUSION

Based on our review of the record, we cannot say that the trial court's findings were manifestly erroneous or that it abused its discretion in denying Andrew's request to disinter his daughter's remains. We do not believe Andrew has demonstrated where or how his consent was vitiated. The requirements for disinterment have not been shown. As a result, we affirm the judgment of the trial court. All costs of this appeal are assessed to Andrew.

**AFFIRMED. COSTS ASSESSED TO APPELLANT.**